No. 88-455

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

DAVID SCIUCHETTI,

       Claimant and Appellant,

  -vs-

HURT CONSTRUCTION & BOLAND CONSTRUCTION,
and STATE COMPENSATION INSURANCE FUND,

       Defendants and Respondents.

APPEAL FROM:  The Workers' Compensation Court,
              In and for the Area of Great Falls, MT,
              The Honorable Timothy W. Reardon, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           R. V. Bottomly, Bottomly Law Office; Great Falls, MT

      For Respondent:

           Hon. Marc Racicot, Attorney General, Helena, MT
           Matthew F. Heffron, Assistant Attorney General

Submitted on Briefs:  May 11, 1989

Decided:    July 14, 1989

Filed:

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Claimant appeals the decision of the Workers' Compensation Court awarding him disability benefits for a knee injury for the statutory maximum of 200 weeks. Claimant contends that he should have received 500 weeks of benefits at a minimum because his disability is attributable to his back in addition to his knee. Claimant also appeals from a subsequent order of the Workers' Compensation Court regarding attorney fees. We affirm the lower court's decision as to both disability benefits and attorney fees.

The issues are:

1. Did the lower court err in concluding that claimant has no impairment or disability of his back?

2. Did the lower court err in its determination of attorney fees?

3. Did the lower court err in denying a lump sum award of attorney fees for future benefits?

Claimant was 35 years old at the time of trial and was employed as a heavy duty construction worker when he suffered two industrial injuries which culminated in his disability. The first injury occurred on November 19, 1983, while claimant was employed by Hurt Construction earning $11.30 an hour. While carrying a wall weighing approximately 250-300 pounds, claimant tripped and fell, causing the wall to strike his right knee. Under the weight of the wall, claimant testified that he wrenched both his knee and his back.

Claimant went to the emergency room where he was treated by Dr. Adelman, who diagnosed acute low back syndrome. The claimant was next examined on March 21, 1984, by Dr. Avery, an orthopedic surgeon. Dr. Avery diagnosed the injury as a (1) probable tear medial meniscus right knee and a (2) recurrent thoracolumbar strain. He recommended that the claimant

2

undergo knee surgery, although claimant testified that he resisted surgery at that time. Dr. Avery also examined claimant's back and found not only that the X-rays were normal, but also that his back had full range of motion. No treatment was prescribed. Claimant testified that he just "put up with the pain." In interpreting Dr. Avery's diagnosis, another orthopedic surgeon, Dr. Bloemendaal, described "recurrent thoracolumbar strain" as a "weakness that throws his back into spasm. It's something in that particular area that is very difficult to demonstrate by anything other than examination when they're in the acute phase. For example, X-rays of that area are normal, and that has been the case with Mr. Sciuchetti. He probably has a weak point up there. When he overdoes things, he gets muscle spasm."

Following the 1983 injury, claimant decided to continue working in the construction field. The Workers' Compensation Court found that he did not see another doctor until he suffered his second industrial injury on August 13, 1984, while working for Boland Construction. This injury resulted in a broken right ankle and aggravation of the right knee. While the ankle was healing, claimant's treating physician, Dr. Bloemendaal, suggested that claimant undergo surgery on his knee. On November 27, 1984, the medial meniscus of claimant's right knee was removed.

At the time he sought treatment for the second injury, claimant testified that he did not mention his back problems to Dr. Bloemendaal, nor did he state it as an injury on his claim for compensation. Regarding the connection between the 1984 injury and claimant's back condition, the Worker's Compensation Court found that "(a) dispute exists as to whether or not the second injury also aggravated the claimant's back."

3

Following the second injury, claimant received temporary total disability benefits of $277.00 per week from August 14, 1984 to January 7, 1985 for the ankle injury. After January 7, 1985, claimant received his maximum total disability rate of $286.00 per week for his injured knee. Claimant has not been regularly employed since the second injury. In July of 1985, he filed a cause of action with the Workers' Compensation Court to determine the nature and extent of his injuries, whether he was receiving the correct temporary total disability rate, whether he was entitled to a lump sum or an increased award as a penalty, and attorney fees. The Workers' Compensation Court concluded that claimant had reached maximum healing of his ankle with no impairment or disability, and that his back had reached maximum healing in November of 1985 with no impairment or disability. The court also concluded that claimant's right knee had reached maximum healing on December 1, 1985, with a maximum seven percent impairment based on the testimony of Dr. Bloemendaal, and that as a result of the knee injury claimant could not return to his former employment as a heavy construction worker. The court determined that claimant was totally disabled pending completion of retraining, and ruled that if claimant failed to enter retraining, he would be determined permanently partially disabled. These determinations were based solely upon the injury to claimant's knee, with none of the disability premised upon the claimant's back problems.

Pursuant to § 39-71-703, MCA (1983), the court calculated claimant's permanent partial disability benefit rate to be $143.00 per week for the maximum 200 weeks for a knee injury, thereby totalling $28,600. The court disallowed any lump sum payment or a 20 percent penalty, but did allow reasonable costs and attorney fees.

On appeal, claimant challenges the sufficiency of the benefits awarded, alleging that it was error for the court to limit a finding of disability to his knee. Claimant also challenges the court's subsequent award of attorney fees.

I.

Did the lower court err in concluding that claimant suffered no impairment or disability to his back?

After reviewing the deposition testimony of four medical experts, the Workers' Compensation Court made findings thereon and concluded that claimant's disability was limited to his right knee as a result of the two industrial injuries. Claimant argues that, in reaching this conclusion, the lower court considered only the medical testimony relating to "impairment," and completely ignored the medical testimony relating to back "disability." He contends that without findings relating to back disability, the lower court erred in attributing disability solely to claimant's right knee, and he should be entitled to 500 weeks of benefits.

We note that impairment is but one factor of disability, and both terms are defined under the 1983 Workers' Compensation Act as follows:

> 39-71-121. Disability defined. A worker is disabled when his ability to engage in gainful employment is diminished as a result of impairment, which in turn may be combined with such factors as the worker's physical condition, age, education, work history, and other factors affecting the worker's ability to engage in gainful employment. Disability is not a purely medical condition. Disability may be temporary total, permanent total, or permanent partial as defined in 39-71-116.
>
> 39-71-122. Impairment defined. Impairment means any anatomic or functional abnormality or loss of bodily function. Impairment refers to functional use of the body and is a purely medical condition. Permanent impairment is any anatomic or functional

abnormality or loss of bodily function after the maximum medical rehabilitation has been achieved. The anatomic or functional abnormality or loss must be considered stable by the physician at the time the impairment rating evaluation is made. An impairment rating is purely a medical determination. Impairment may or may not result in disability.

In reviewing the lower court's determination of disability, this Court must determine whether sufficient evidence exists to support that conclusion. Linton v. City of Great Falls (Mont. 1988), 749 P.2d 55, 61, 45 St.Rep. 68, 74. Claimant points out that because all of the medical testimony in this case was by deposition, this Court is in as good a position as the Workers' Compensation Court to judge the weight to be given that testimony, citing Snyder v. San Francisco Feed & Grain (Mont. 1987), 748 P.2d 924, 929, 44 St.Rep. 2216, 2224. While that standard of review is correct, this Court will nevertheless uphold the lower court if there is substantial credible evidence to support its conclusion. We note that in Snyder, the conclusion of the Workers' Compensation Court was found to be "in stark contrast with the evidence presented at trial," and the case was reversed. 748 P.2d at 929.

In this case, the relevant findings made by the lower court regarding the medical evidence presented on claimant's back disability and impairment are as follows:

9. The claimant was working for Hurt Construction when he injured his right knee and low back on November 29, 1983. He went to the emergency room and was treated by Dr. Adelman, who diagnosed the claimant as having acute low back syndrome.

10. The claimant was next examined by Dr. Avery on March 21, 1984. He found that his back x-rays were normal and that the claimant's back had full range of motion. He did not prescribe

6

any treatment for the claimant's back at that time.

12. The claimant did not see another doctor until he suffered his second industrial injury when he fractured his right ankle while working for Boland Construction on August 13, 1984. The claimant did not mention a back problem to his treating physician Dr. Bloemendaal, nor did he state it as an injury on his claim for compensation. It was not mentioned in his claim for compensation. (Exhibit 3 at 2) or the Employer's First Report.

14. It is agreed by all medical experts that the claimant's back reached maximum medical healing in November of 1985.

15. Claimant's treating physician, Dr. Bloemendaal, testified that he did not treat the claimant's back and found no back impairment. Dr. Schutte testified that the claimant's back last "went out" in 1984, but there was no back impairment in January, 1986. Dr. Hinde reported that there had been no progression in the back pain and that it was stable, so he did not address the issue.

25. The claimant has no impairment of the back.

Having reviewed the record, we conclude that these findings accurately reflect the medical testimony presented and are not clearly erroneous. Tenderholt v. Travel Lodge Intern. (Mont. 1985), 709 P.2d 1011, 1013, 42 St.Rep. 1792, 1794. However, claimant contends that these findings are inadequate based upon additional medical evidence which he claims clearly establishes that his back bars him from laboring activities. In essence, claimant requests that this Court make additional findings regarding disability which are not confined to "impairment." Claimant refers us to several statements made by the medical experts which he contends the lower court overlooked in reaching its conclusion.

7

First, claimant contends that although his treating physician, Dr. Bloemendaal, rendered a conclusory opinion of no back impairment, the fact that he prescribed drugs for back pain over a considerable period of time is evidence of back disability. The record indicates that it was the claimant who stated that he was given muscle relaxants by Dr. Bloemendaal. The doctor himself, however, testified that he did not recall ever prescribing anything to the claimant for his back. He further testified that he did not recall ever treating claimant's back in any manner. Claimant's assertion on this point is therefore not supported by the record.

Claimant also contends that Dr. Bloemendaal's testimony establishes that claimant is unable to work in heavy construction because of his back condition. The record indicates that Dr. Bloemendaal did not attribute the upper back problems to either of the accidents involved in this action, nor did he testify that claimant could not perform heavy construction work because of his back. Given this lack of conclusive evidence, we hold that the Workers' Compensation Court did not err in its refusal to find that claimant cannot work in construction because of his back.

Next, our attention is directed to the testimony of Dr. Hinde, a physiatrist who examined the claimant at the request of claimant's counsel in November, 1985. Claimant argues that Dr. Hinde's testimony establishes objective manifestations of pain and loss of motion in his back, thereby justifying a finding and conclusion of back disability. The doctor's notes state that:

> I did document some mild limitation of internal and external rotation of the shoulders, and that these maneuvers did produce mild discomfort in the area of the mid-thoracic spine at the level of T6, T7. He also reported some tenderness to my palpation of the paraspinal structures in this location.

8

Claimant told Dr. Hinde that his back problems stemmed from an injury which occurred in 1976 while lifting some heavy pipes. Dr. Hinde did not attribute the back condition to either of the accidents involved in this action. He testified that the scope of his examination was limited to "any disability which still related to injuries to his right knee and right ankle," and he did not attempt to tie the claimant's back problems to any specific injury. When considered with the whole of Dr. Hinde's testimony, we conclude that his notes indicating mild discomfort and mild limitation of rotation do not mandate a finding of pain and loss of motion to claimant's back, and that the lower court did not err in failing to make such a finding. Instead, the court's finding there was no loss of motion reflects the testimony of Dr. Bloemendaal. When the Workers' Compensation Court's findings are based on conflicting evidence, this Court's review is confined to determining whether there is substantial evidence on the whole record to support those findings. Wight v. Hughes Livestock Co., Inc. (Mont. 1981), 634 P.2d 1189, 1192, 38 St.Rep. 1632, 1635. Having reviewed the record, we hold that a finding there was no loss of motion is supported by the evidence.

Next, claimant asks that we reassess the testimony of Dr. Schutte, a specialist in sports trauma, who reviewed the medical records of Dr. Adelman, Dr. Avery, and Dr. Bloemendaal and rendered an opinion that claimant had no back impairment in January of 1986. Dr. Schutte testified that, "According to my records, the patient told me that his upper back continues to go out and that his back has been on and off in the interim." Claimant contends that it was error for the Workers' Compensation Court not to make a finding reflecting this testimony which would form a basis for a conclusion of back disability. Given the whole of Dr. Schutte's

9

testimony and the other medical evidence, we conclude that the lower court did not err in its findings. Dr. Schutte examined claimant's back and found that it was within the normal range of flexion, extension, and lateral bending. He also took X-rays of his thoracic spine and found them to be normal. As with the three other medical experts, Dr. Schutte did not attribute claimant's upper back problems to either of the industrial accidents involved in this action. We hold that the lower court did not err in its findings.

Finally, the claimant directs our attention to the deposition testimony of Dr. Pardis, a chiropractor who examined him in December of 1985 at the request of claimant's counsel. Dr. Pardis was asked to evaluate the current condition of the upper back based upon his 1985 examination of claimant and additional medical records compiled in 1978 when he treated claimant's back for a separate incident of injury. The claimant argues that, based on Dr. Pardis' testimony, the lower court should have found that he was required to leave the construction field because of his back. While Dr. Pardis' testimony establishes that heavy construction is not advisable given claimant's back condition, the back condition was not connected to any specific injury, let alone the two industrial accidents involved here. When asked to make the connection between the back complaints and the injuries, Dr. Pardis responded that "there's no way of tying it to a specific accident," and stated that different conditions such as spinal cord lesions, tumors, fractures, or dislocations could also mimic the symptoms of which claimant complained. We conclude that the lower court did not err in refusing to find that claimant was forced to leave construction due to his 1983 or 1984 industrial accidents.

Having reviewed the overall record, we conclude that claimant is attempting to have this Court substitute its

judgment for that of the lower court based on isolated passages of testimony when, in fact, the lower court's findings are supported by the record and do not indicate that any testimony was overlooked or ignored. We conclude that the lower court's conclusion is not in stark contrast to the evidence presented at trial, as was the case in Snyder. We hold that the lower court adequately considered both "impairment" and "disability" in reaching its conclusion, and that there are no grounds for modifying the findings or conclusions reached in this case.

## II.

Did the lower court err in its determination of attorney fees?

In a subsequent hearing to determine reasonable attorney fees, the parties disputed whether fees should be paid on benefits received after claimant reached maximum medical healing, until the date he entered retraining pursuant to the court's order finding him permanently and totally disabled. The period in question runs from November 26, 1985 to November of 1987, during which time claimant received temporary total disability benefits.

The Workers' Compensation Court disallowed attorney fees for that period based on McKinley v. American Dental Mfg. Co. (Mont. 1988), 754 P.2d 831, 45 St.Rep. 892. In that case, this Court stated that there are two conditions to an award of attorney fees under § 39-71-612, MCA (1983), which is the applicable statute in the present case: (1) the amount of compensation must be in controversy, and (2) the amount awarded must exceed the amount paid or tendered, citing LaSar v. Oftedal & Sons (Mont. 1986), 721 P.2d 352, 43 St.Rep. 1938. Because claimant in this case was awarded the same amount of temporary total disability benefits as the State

11

Fund was already paying, the Workers' Compensation Court determined that he was not entitled to attorney fees from November 26, 1985 to November of 1987.

On appeal, claimant argues that this determination was in error because payment of benefits during that time (1) was a fact in controversy and were secured by the efforts of counsel, and (2) was not voluntary or unconditional because the State Fund fully expected to recoup any excess total disability payments had claimant been declared permanently partially disabled at the hearing. Claimant argues that these contentions form a basis for attorney fees not only under § 39-71-612, MCA (1983), but under § 39-71-611, MCA (1983), as well because of defendant's denial of liability for payment of any benefits after November of 1985.

Section 39-71-611, MCA (1983), only applies "[i]n the event an insurer denies liability for a claim for compensation or terminates compensation benefits." Here, the Workers' Compensation Court found as an uncontested fact that "defendant accepted liability for claimant's injury and has paid weekly temporary total disability benefits to date." Therefore, § 39-71-611, MCA (1983), is inapplicable.

Secondly, claimant's contention that payments were not voluntary or unconditional based on how the State Fund might have proceeded is pure conjecture and is not supported by the record. We hold that the Workers' Compensation Court did not err in determining that claimant was not entitled to attorney fees for the period from November, 1985 to November, 1987.

III.

Did the lower court err in denying a lump sum award of attorney fees for future benefits?

The Workers' Compensation Court determined that lump sum attorney fees would be awarded on the permanent partial

disability payments which were to be granted after claimant had completed his retraining period. However, the court held that lump sum attorney fees would not be awarded based on the total disability benefits paid out to claimant during his retraining program. The court based its determination on a finding that:

> [I]t is questionable as to whether claimant will successfully complete the entire four years of his program. The Court draws this conclusion from the fact that claimant expressed little enthusiasm at the time of trial for the four-year computer science course. Therefore, claimant's counsel is entitled to 33 percent of all past paid total disability benefits in a lump sum but, thereafter, claimant's counsel is to receive his fee payment biweekly.

This Court has held that a denial of lump sum attorney fees for future benefits which may never accrue is not an abuse of the lower court's discretion. Swan v. Sletten Construction Co. (Mont. 1986), 726 P.2d 1170, 1172, 43 St.Rep. 1926, 1929. Despite this authority, claimant argues that a lump sum award is not precluded if it is warranted by the facts. He argues that the following facts distinguish this case from Swan and render the lower court's denial of lump sum attorney fees an abuse of discretion:

> (1) Claimant is in perfect health and is likely to live out his life expectancy;
> . . .
> (3) The fee agreement (drafted prior to Swan) reflects the traditional expectations that lawyers will receive their contingent fees in a single lump sum;
> (4) Denying lump sum fees in a case like the present case will discourage attorneys from representing needy claimants and will thereby frustrate the public policy of compensating injured workers.

Despite these contentions, we hold that the Workers' Compensation Court's denial of lump sum fees was not an abuse

13

of discretion. The reason for the court's denial was specifically stated in its order, and was based upon the court's observance of the character and demeanor of the claimant. The court reasoned that if claimant discontinued his training course, the remainder of the temporary total benefits for which claimant now requests a lump sum of attorney fees might never accrue. Such a determination is not an abuse of discretion.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

14

Mr. Justice William E. Hunt, Sr., dissenting:


    I dissent.  I would reverse the Workers' Compensation Court and award the claimant disability for the injury to his back.

Justice