No. 94-145

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

LaVERN F. BURNS,

      Petitioner and Appellant,

-vs-

PLUM CREEK TIMBER COMPANY,

      Respondent, Insurer and Respondent.

FILED

NOV 22 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court, State of Montana,
                The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

           Dean K. Knapton, Attorney at Law, Kalispell, Montana

      For Respondent:

           Kelly M. Wills; Garlington, Lohn & Robinson
           Missoula, Montana

Submitted on Briefs:   August 11, 1994

Decided:   November 22, 1994



Justice Karla M. Gray delivered the Opinion of the Court.

LaVern F. Burns (Burns) appeals from the Findings of Fact, Conclusions of Law and Judgment entered by the Workers' Compensation Court. We conclude that substantial evidence supports the court's decision: therefore, we affirm.

Burns filed a petition for hearing in the Workers' Compensation Court on April 1, 1993. He alleged that he suffered an industrial injury to his arm on March 16, 1992, arising out of the course of his employment as a spreaderman with Plum Creek Manufacturing. Plum Creek Timber Company (Plum Creek) responded and clarified that it had been Burns' employer at the time of the alleged industrial injury.

The action proceeded and a Pre-Trial Order was entered. The parties agreed that Burns had suffered an injury in 1985, prior to his employment by Plum Creek in 1987, which was diagnosed as a right subclavian vein thrombosis. The parties also agreed that, on March 17, 1992, Burns was diagnosed with a right subclavian vein thrombosis (hereafter "rethrombosis"). The parties disagreed over whether the 1992 rethrombosis resulted from an injury as defined by the Montana Workers' Compensation Act (the Act), with Burns contending that his "condition arose during a single work shift as a result of an unexpected traumatic incident or unusual strain to his arm/shoulder during his 3/16/92 shift."

Trial was held before the Workers' Compensation Court on October 13, 1993. Burns testified in person and presented three other witnesses on his behalf. Testimony from doctors Gregory Luna

2

(Luna), Joseph Knapp (Knapp), and Charles Swannack (Swannack) was presented by deposition. Burns' medical records and a videotape of the spreader machines involved in Burns' job were admitted as exhibits.

The Workers' Compensation Court entered its findings, conclusions and judgment on March 18, 1994. The court made detailed findings and, on the basis of those findings, determined that Burns had not established entitlement to benefits by a preponderance of the credible evidence. Burns appeals.

Does substantial credible evidence support the Workers' Compensation Court's findings?

Burns does not argue that there is insufficient evidence to support findings made by the Workers' Compensation Court. He asserts that the court improperly rejected portions of his uncontroverted testimony and that of his wife, finding that testimony not credible. He also contends that the court failed to give sufficient weight to evidence from treating physicians. In essence, Burns argues that sufficient evidence exists to support findings different from those made by the court. That is not, however, the applicable standard.

We review the findings and decision of the Workers' Compensation Court to determine whether they are supported by substantial credible evidence. Smith v. United Parcel Service (1992), 254 Mont. 71, 75, 835 P.2d 717, 720. Where conflicting evidence is presented and the credibility of witnesses or the weight to be given their testimony is at issue, we will not substitute our judgment for that of the trial court. Smith, 835

P.2d at 720.

It is undisputed that § 39-71-119, MCA (1987), provides the controlling definitions with regard to the injury itself and the requisite causal connection. As we paraphrased in Welch v. American Mine Services, Inc. (1992), 253 Mont. 76, 81, 831 P.2d 580, 584, "there must be an 'injury' and an 'accident,' and the injury must be 'caused by' the accident." Here, the parties presented conflicting evidence regarding whether Burns' rethrombosis was an injury caused by an accident which occurred during Burns' employment with Plum Creek on March 16, 1992.

The evidence relating to Burns' March 16, 1992, work shift was presented primarily through the testimony of Burns and his wife Pam. Burns testified about the nature of his job as a spreaderman for Plum Creek. Burns had worked for Plum Creek since 1987, but only began working on the spreaders in June 1991, as part of a four-person team which assembled plywood sheets in layers as they came through a roller. He testified that he quit weight-lifting activities around that **time** because the work was pretty hard and took up all his energy.

Burns worked an unremarkable day shift on Friday, March 13, 1992, and had the weekend off. He and Pam both testified that the weekend was a quiet one and that Burns did nothing strenuous over that period of time.

He then worked the swing shift on March 16, 1992, during which he alleged the injury occurred which caused the rethrombosis. He was working as a **"core layer"** at the time, catching large pieces of

4

plywood ("27s") in his right hand as they came off the roller one at a time, and using his other hand to help place each 27 onto a larger piece of plywood veneer. Burns testified that he experienced a tingling sensation in his right hand toward the end of the shift, and stopped work for a short time. He told his supervisor that his arm was bothering him, but did not report an injury or accident at that time. He returned to work and finished the shift.

Other portions of Burns' testimony were not as clear. He testified at various points that he was hit by 27s in the chest or face a few times during the shift and, conversely, that he was not bumped or struck. He testified that he noticed the tingling in his hand and arm when he had his arms and hands outstretched to catch a 27; alternatively, he testified that he felt the tingling in his hand when 27s hit him in the hand. He testified that nothing unusual or unexpected occurred during the work shift at issue and that the "hits" and "bumps" he described were normal and regular happenings in performing the job of a core layer. Finally, and in response to questioning from the court, he acknowledged that he could not identify a specific bump or "catch" as the cause of the rethrombosis.

Burns testified that, on returning home after the March 16 shift, he merely told Pam that his arm ached and hurt. This testimony corresponded with her testimony to the same effect on direct examination. Pam testified on cross-examination, however, that Burns told her that night that two 27s hit him in the hand.

5

The court made detailed findings concerning the testimony of Burns and his wife, noting some of the inconsistencies in their statements. The court also found Burns' testimony that he had quit lifting weights shortly after starting work on the spreaders in June, 1991, inconsistent with his statement to Dr. Knapp that he had continued heavy weight-lifting until the time of the rethrombosis. We conclude that the Workers' Compensation Court's findings regarding the testimony of record are supported by substantial evidence.

The court also made credibility findings, based on its opportunity to hear the testimony of Burns and his wife and observe their demeanor. It rejected Burns' testimony that he had given up weight-lifting in 1991, rejected his wife's testimony that Burns told her he was hit in the hand by two 27s, and rejected similar testimony from Burns at trial which attempted to establish a specific event which caused the injury. We will not substitute our judgment for that of the Workers' Compensation Court when conflicting evidence is presented and the credibility of the witnesses is at issue. Smith, 835 P.2d at 720.

Burns argues that the court's credibility determinations were erroneous. He relies on McGuire v. American Honda Co. (1977), 173 Mont. 171, 176, 566 P.2d 1124, 1126, for the principle that uncontroverted credible evidence may not be disregarded. That principle is inapplicable here. First, Burns' trial testimony about events during the March 16, 1992, work shift was not uncontroverted; it was both inherently contradictory and, in part,

controverted by his deposition testimony.   Second, the court specifically found Burns' testimony to be not credible.   Thus, McGuire is inapposite.

Burns also contends that this case is a "mirror image" of Prillaman v. Community Medical Center (1994), 264 Mont. 134, 870 P.2d 82.   His reliance on Prillaman, which did not involve credibility determinations, is totally misplaced.   Nothing in Prillaman even remotely suggests that a finder of fact is required to accept nonmedical evidence without judging its credibility.

In addition to the nonmedical testimony before the court, the record contained substantial and conflicting medical evidence. In Dr. Knapp's view, Burns suffered a recurrence of subclavian vein thrombosis without identifiable or documented recurrence trauma. He found no evidence linking the rethrombosis to Burns' employment and, in his opinion, there was only a 10% to 15% chance that Burns' work activities caused the rethrombosis. Dr. Swannack also was unable, to a reasonable degree of medical certainty, to relate the rethrombosis to Burns' work activities on a single day or during a single shift.   He opined that the condition could have resulted from a variety of things other than injury and also could simply have been a natural consequence of the earlier thrombosis, without precipitating injury or trauma.   Drs. Knapp and Swannack agreed that a thrombosis typically does not become symptomatic for three to five days after an underlying trauma.

Dr. Michael Oreskovich's opinion, on the other hand, was that the rethrombosis "occurred as a consequence of an accident at

work." Dr. Oreskovich did not identify a specific trauma, strain or occurrence suffered by Burns during the work shift at issue which would have caused the thrombosis.

Dr. Luna examined Burns more than a year after the rethrombosis, on referral from Dr. Oreskovich. His initial testimony via deposition was that he concurred in Dr. Oreskovich's opinion about what "most probably" happened regarding Burns' rethrombosis; his concurrence, however, was with a number of "qualifiers." On examination by counsel for Plum Creek, Dr. Luna was unable to opine to a reasonable degree of medical certainty that the occlusion which caused Burns' recurrent subclavian vein thrombosis arose as a result of his activities on a single work shift.

The Workers' Compensation Court's findings set forth the substance of the medical evidence in some detail. We conclude that those findings, including the finding that Dr. Oreskovich's opinion was the only firm medical opinion relating the rethrombosis to a single work shift, are supported by substantial credible evidence.

Importantly, the court also found that Dr. Oreskovich's opinion was contained in a letter rather than presented via deposition or trial testimony subject to cross-examination, and that Dr. Luna's initial support for that opinion was significantly qualified. On those bases, the court made a specific finding that it did not accept Dr. Oreskovich's opinion. We will not substitute our judgment for that of the Workers' Compensation Court where conflicting evidence is presented and the weight to be given

testimony is at issue.  See Smith, 835 P.2d at 720.

We hold that the court did not err in weighing the evidence and determining the credibility of the witnesses. We further hold that the Workers' Compensation Court's findings and decision are supported by substantial credible evidence.

AFFIRMED.

_____
                                                        Justice

We concur:

_____

_____

_____

_____
        Justices