No. 95-102

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

GERALD WILSON,

      Petitioner and Appellant,

v.

LIBERTY MUTUAL FIRE INSURANCE,

      Respondent and Insurer for

UNITED PARCEL SERVICE,

      Employer.



FILED

SEP 2 6 1995

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    Workers' Compensation Court, State of Montana
                  The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Richard J. Pyfer, Attorney at Law; Small, Hatch,
          Doubek & Pyfer, Helena, Montana

      For Respondent:

          Larry W. Jones, Attorney at Law; Liberty Northwest
          Insurance, Missoula, Montana


Submitted on Briefs: August 17, 1995

Decided: September 26, 1995

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Gerard Wilson (Wilson) appeals from the Findings of Fact, Conclusions of Law and Judgment of the Workers' Compensation Court denying his claim for permanent partial disability benefits for his 1986 and 1988 work-related injuries. We affirm.

We consider the following issue on appeal:

Is the Workers' Compensation Court's finding that Wilson failed to establish that his present back condition was caused by his work-related injuries supported by substantial credible evidence?

Wilson began working for United Parcel Service (UPS) as a porter in 1979. Within two years, he was employed as a full-time package-car driver. Wilson suffered two work-related injuries while employed by UPS, one on April 16, 1986, and one on December 27, 1988. At the time of both of these injuries, UPS' workers' compensation insurer was Liberty Mutual Fire Insurance Company (Liberty). Liberty accepted liability for both injuries.

Wilson's 1986 work-related injury occurred while loading packages onto a UPS truck. As he lifted a box to about eye level, he felt a "major pop" in his upper back. As a result of this injury, Wilson missed work from May 5, 1986, through June 2, 1986.

Various doctors examined Wilson after his 1986 injury. Dr. Michael Strekall, Dr. William Batey and Dr. Kenneth Carpenter each diagnosed Wilson with some form of back strain. On May 30, 1986,

Dr. Carpenter released Wilson to return to work full-time as a package-car driver. Wilson did not seek additional medical treatment regarding back complaints until he sustained his 1988 injury.

On December 27, 1988, Wilson injured his back when he slipped and fell on a UPS customer's driveway after delivering a package. He landed on his back, head and elbows.

The following day, Dr. Batey examined Wilson; he diagnosed a contusion of the lumbar spine and prescribed rest, heat and Motrin for the next two to three days. He observed that Wilson did not appear to be in a significant amount of pain. Wilson followed up with Dr. Batey on January 4, 1989, and informed Dr. Batey that he had returned to work but the pain had persisted. Dr. Batey diagnosed a lumbar strain.

Wilson left his job with UPS in March of 1990. He did not seek additional medical treatment regarding his back complaints until October 26, 1990, when he was examined by Dr. Harris Hanson. Dr. Hanson noted that Wilson felt a pop in his back a few days prior to this visit and diagnosed back strain in the lumbar and dorsal areas. At that time, Wilson was employed by Sweetheart Bakery as a delivery-car driver.

Wilson did not seek further medical attention relating to back problems until May 26, 1993. At that time, he saw Dr. Batey and told him that he had been experiencing ongoing back pain since his 1986 and 1988 injuries. Dr. Batey examined Wilson and diagnosed

3

chronic lumbar strain. On June 9, 1993, Dr. Batey noted no improvement and referred Wilson to Dr. Allen Weinert.

Dr. Weinert diagnosed degenerative disc disease in the L4-5 and L5-S1 levels and opined that Wilson suffered from chronic discogenic pain. His diagnosis was based primarily on Wilson's medical history. Dr. Weinert provided a five percent impairment rating with respect to Wilson's back condition, apportioned as three percent for Wilson's 1986 injury, one percent for the 1988 injury, and one percent for "his March of 1990 injury." Liberty paid Wilson a five percent indemnity award based on Dr. Weinert's impairment rating.

At Liberty's request, Dr. Robert Chambers examined Wilson on March 9, 1994. He disagreed with Dr. Weinert's diagnosis of degenerative disc disease and diagnosed Wilson with chronic back pain syndrome. Upon receipt of Dr. Chambers' report, Liberty denied further liability for permanent partial disability benefits.

In May of 1994, Wilson petitioned the Workers' Compensation Court for permanent partial disability benefits. After a hearing on Wilson's claim, the Workers' Compensation Court found that Wilson failed to establish that his present back problems were attributable to his 1986 and 1988 work-related injuries. The court concluded, on that basis, that he was not entitled to permanent partial disability benefits. Wilson appeals.

> Is the Workers' Compensation Court's finding that Wilson failed to establish that his present back condition was caused by his work-related injuries supported by substantial credible evidence?

4

The law in effect at the time of a work-related injury governs the determination of workers' compensation benefits. Buckman v. Montana Deaconess Hospital (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Here, the 1985 version of the Workers' Compensation Act (the Act) applies to Wilson's 1986 back injury and the 1987 version of the Act applies to his 1988 injury. Pursuant to both versions of the Act, a claimant must establish that a work-related injury *caused* his disabling condition. See §§ 39-71-116(12), MCA (1985), and 39-71-116(14), MCA (1987).

After considering the evidence presented at trial, the Workers' Compensation Court found it more likely that Wilson's 1986 and 1988 injuries were strains which were wholly resolved within weeks and, therefore, that Wilson had not established a causal connection between those injuries and his present back problems. This finding is pivotal because, absent Wilson establishing the statutorily-required causal connection, he is not entitled to permanent partial disability benefits.

Our standard in reviewing findings of the Workers' Compensation Court is whether they are supported by substantial credible evidence. Miller v. Frasure (1991), 248 Mont. 132, 137, 809 P.2d 1257, 1260. Substantial evidence is more than a mere scintilla of evidence but may be less than a preponderance of the evidence. Miller, 809 P.2d at 1261. We will not substitute our judgment for that of the trial court when the issue relates to the weight given to certain evidence or the credibility of the

5

witnesses. Burns v. Plum Creek Timber Co. (1994), 268 Mont. 82, 84, 885 P.2d 508, 509 (citation omitted).

Wilson points out that, because the medical evidence in this case was presented through depositions, we are in as good a position as the Workers' Compensation Court to judge the weight to be given to that evidence. We have stated, however, that our review of medical evidence presented through depositions must be considered in the context of the other evidence presented at trial which was relevant to the medical issue. Caekaert v. State Compensation Mutual Ins. Fund (1994), 268 Mont. 105, 110, 885 P.2d 495, 498; citing McIntyre v. Glen Lake Irrigation District (1991), 249 Mont. 63, 68, 813 P.2d 451, 454. Therefore, although Wilson correctly states our standard in reviewing medical evidence presented through depositions on a stand-alone basis, we will uphold the decision of the Workers' Compensation Court where substantial credible evidence supports that overall decision. Sciuchetti v. Hurt Construction (1989), 238 Mont. 170, 174, 777 P.2d 308, 311.

Here, the Workers' Compensation Court weighed conflicting evidence regarding whether Wilson's present back problems were caused by his 1986 and 1988 work-related injuries and made credibility determinations. Having done so, the court found it more likely that Wilson's 1986 and 1988 work-related injuries were strains which were wholly resolved within weeks than that the earlier injuries caused Wilson's current back problems. The court

6

relied, in part, on Dr. Chambers' testimony.

Dr. Chambers interviewed Wilson and considered his medical history. He also reviewed reports prepared by the doctors who examined Wilson subsequent to his 1986 and 1988 injuries. Dr. Chambers examined Wilson on March 9, 1994. During Wilson's physical examination, Dr. Chambers observed that "no supporting objective findings could be detected that would support or explain [Wilson's] peripheral complaints on a physical basis." He opined that the progression of Wilson's subjective complaints was consistent with the natural history of chronic back pain syndrome and concluded that Wilson did not sustain any permanent impairment as a result of his 1986 and 1988 injuries.

Dr. Chambers subsequently had x-rays of Wilson's spine forwarded to him for his review. After reviewing and comparing four sets of x-rays taken between January 4, 1989, and September 7, 1993, Dr. Chambers concluded that the x-rays "show no evidence of change that could reflect an ongoing reactive process that could be related to either of [Wilson's] industrial incidents."

Additional medical evidence buttresses Dr. Chambers' opinion. Dr. Batey reviewed x-rays of Wilson's lumbar spine taken on March 26, 1990, and concluded that they appeared normal. Additionally, Dr. Dan Alzheimer x-rayed Wilson's lumbar spine at Dr. Weinert's request and reported that Wilson's lumbar spine was normal and "demonstrate[d] no evidence of disc space compromise." Dr. Weinert agreed with this report.

7

It is true, as Wilson argues, that other portions of Dr. Weinert's testimony support Wilson's claim that he has suffered ongoing back pain since his work-related injuries. Our standard, however, is not whether evidence supports findings different from those made by the Workers' Compensation Court, but whether substantial credible evidence supports the court's findings. Caekaert, 885 P.2d at 498 (citation omitted).

In any event, the Workers' Compensation Court determined that Dr. Weinert's testimony was problematic in several respects. Dr. Weinert repudiated his earlier apportionment of one percent of Wilson's five percent impairment rating to an unconfirmed March 1990 injury and simply amended the impairment rating to exclude reference to the 1990 injury. In doing so, he reapportioned the five percent impairment rating between the 1986 and 1988 injuries. Furthermore, Dr. Weinert adhered to his medical opinion that Wilson suffers from degenerative disc disease attributable to the 1986 and 1988 work-related injuries notwithstanding his agreement with Dr. Alzheimer's report that Wilson's lumbar spine was normal.

Moreover, Dr. Weinert's diagnosis was based primarily on the medical history provided by Wilson. The Workers' Compensation Court had an opportunity at trial to observe Wilson's demeanor and to consider his testimony in light of all of the evidence presented. The court found that Wilson was not a credible witness. It is well-settled that we will not substitute our judgment for that of the Workers' Compensation Court concerning the credibility

8

of witnesses or the weight to be given their testimony. Shupert v. Anaconda Aluminum Co. (1985), 215 Mont. 182, 187, 696 P.2d 436, 439 (citation omitted).

Wilson asserted that he has suffered ongoing back pain since his 1986 and 1988 injuries. However, other evidence presented at trial directly contradicted Wilson's testimony. On April 20, 1988, Wilson underwent a United States Department of Transportation (DOT) physical examination in which the examining physician noted that Wilson had pulled muscles in his back but that, regarding this problem, there was "nothing on going." Wilson underwent another DOT examination on March 26, 1990. Dr. Batey noted "no problems" and that Wilson was "doing well." Approximately six months later, Dr. Batey examined Wilson regarding an eye problem. He noted no changes in Wilson's health since the March DOT examination and approved Wilson to take a fire-fighter physical examination. On March 23, 1992, Wilson underwent another DOT examination. Wilson passed the examination and there was no indication of any back problems at that time. Additionally, it appears from the record that Wilson did not tell any doctor that he had suffered ongoing back pain since his work-related injuries until May 26, 1993, when he was examined by Dr. Batey.

We conclude that substantial credible evidence supports the Workers' Compensation Court's finding that the 1986 and 1988 injuries were strains which were wholly resolved within weeks and, therefore, that Wilson failed to establish that his present back

condition was caused by those injuries.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's conclusion that there was substantial evidence to support the judgment of the Workers' Compensation Court. Therefore, I would affirm that judgment. However, I do not agree with all that is said in the majority opinion.

_____
Justice

Justice William E. Hunt, Sr., joins in the foregoing specially concurring opinion.

_____
Justice

11