NO.   95-484

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

EDWIN A. TAYLOR,

    Petitioner and Appellant,

    v.

STATE COMPENSATION INSURANCE FIND,

    Respondent and Insurer, for,

MONTANA DEPARTMENT OF HIGHWAYS,

    Employer and Respondent.


FILED

MAR 18 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court
               The Honorable Mike McCarter, Judge presiding

COUNSEL OF RECORD:

        For Appellant:

            Wade J. Dahood, Bernard J. Everett, Knight, Dahood,
            McLean & Everett, Anaconda, Montana

        For Respondent:

            Oliver H. Goe, Browning, Kaleczyc, Berry & Hoven,
            Helena, Montana

                        Submitted on Briefs:   February 1, 1996

                                   Decided:   March 18, 1996

Filed:

_____
              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Edwin A. Taylor (Taylor) appeals from the Findings of Fact, Conclusions of Law and Judgment of the Workers' Compensation Court determining that two of three workers' compensation claims filed by Taylor were fraudulent. We affirm.

We consider the following dispositive issues on appeal:

1. Does substantial credible evidence support the Workers' Compensation Court's finding that Taylor filed fraudulent claims for injuries?

2. Did the Workers' Compensation Court err when it failed to find that the insurer's conduct was unreasonable and in failing to award Taylor his attorney's fees, costs, and the statutory penalty?

Taylor began working for the Montana Department of Transportation (DOT) in 1988. At the time of Taylor's alleged accidents, Taylor's job classification was a truck driver. Taylor filed claims for industrial accidents that allegedly occurred on February 26, 1990, November 15, 1990, and March 4, 1991. At the time of the alleged injuries, State Fund was the workers' compensation insurer for the DOT. State Fund accepted liability for each claim and began paying Taylor wage loss and medical benefits. Although State Fund began an investigation of Taylor's claims and requested the Montana Criminal Investigations Bureau to conduct an investigation, State Fund continued to pay benefits until April of 1994.

Taylor alleges that he injured his neck in an industrial accident on February 26, 1990. Taylor underwent neck surgery for this injury. Similarly, Taylor alleges that he suffered a work-

2

related injury on November 15, 1990, while he was working in the maintenance shed of the DOT's Bozeman, Montana facility. No one witnessed this accident. He alleges that he bumped the left side of his head near his ear while he was standing up from checking bolts on the plow. Taylor asserts that he hit his head so hard that it knocked him to his knees. Following this incident, Taylor consulted Dr. Pamela Hiebert for treatment. Taylor was admitted to Bozeman Deaconess Hospital overnight for observation. The next day, Taylor was discharged from the hospital and sought no further treatment for this injury. State Fund accepted liability for this claim.

On March 4, 1991, Taylor was working with a road crew fixing pot holes on Main Street in Bozeman, Montana. Taylor testified that near the end of his shift he was directed to pick up the safety cones and signs that marked the job area. He alleges that while picking up the cones he stumbled and fell, hitting his head, neck, and shoulders and landing on his hips and back. Again, this accident was unwitnessed. After the incident, Taylor got into the truck and drove approximately one mile back to the DOT shop where he reported the accident to his acting supervisor, Dan Noyes (Noyes), and asked Noyes to drive him to the hospital. Taylor was admitted to the hospital and, while hospitalized, he complained of lumbar pain and pain in his left extremities. Taylor was discharged from the hospital on March 8, 1991. Two days later, Taylor was readmitted to the hospital for injuries related to his cervical and lumbar spine. He was treated with an anesthetic and

3

an anti-inflammatory and was again released from the hospital on March 15, 1991.

Taylor was admitted to St. Vincent's Hospital in Billings, Montana, on August 27, 1991, by Dr. James Johnson, and was released the next day. On August 29, 1991, at the request of Dr. Johnson, Taylor was examined by Dr. Robert Snider, an orthopedic surgeon, who stated that surgery may not be of any value because he was not sure of the source of Taylor's back pain. Another doctor concurred in the opinion that surgery was not warranted.

In the fall of 1993, Taylor was seen by another orthopedic surgeon, Dr. James Lovitt, who opined that Taylor had two choices, to live with his pain or to consider surgery. Dr. Lovitt noted that Taylor was not a good candidate for surgery, which included spinal fusion, because of his history of smoking and, further, that surgery might lead to additional complications.

State Fund asserted that Taylor did not suffer a disabling injury on March 4, 1991, and, therefore, terminated Taylor's benefits on April 20, 1994. State Fund filed a petition for hearing before the Workers' Compensation Court alleging that Taylor did not suffer any industrial injuries and that his claims were fraudulent. Taylor responded by filing a petition for hearing in order to reinstate his benefits. The Workers' Compensation Court consolidated the petitions and trial was held in February of 1995.

At trial, State Fund offered the testimony of several witnesses to prove that Taylor's claims were fraudulent. Elizabeth Larain (Larain) and Robert Beebe (Beebe) testified that Taylor

allegedly told them that he was "scamming the system" and that his claims were fraudulent. Beebe testified that he called the Workers' Compensation Fraud Hotline and reported Taylor's fraudulent claim. Larain testified that she had telephoned Lance Zanto, an adjuster with State Fund, and told him that Taylor's claims were fraudulent. Several other witnesses, including a claims adjuster with State Fund, an investigator with the Montana Criminal Investigations Bureau, Taylor's former supervisor from the DOT, and Taylor's ex-wife testified at trial. The Workers' Compensation Court acknowledged that "the credibility of witnesses testifying at trial is critical to the resolution of this case."

Ultimately, the Workers' Compensation Court determined that both the November 15, 1990 and the March 4, 1991 claims were fraudulent. The court concluded that State Fund failed to carry its burden of proof that the February 26, 1990 claim was fraudulent. Taylor appeals from the determination that two of his claims were fraudulent.

1. Does substantial credible evidence support the Workers' Compensation Court's finding that Taylor filed fraudulent claims for injuries?

In reviewing findings of the Workers' Compensation Court, we determine whether the findings are supported by substantial credible evidence. Wilson v. Liberty Mut. Fire Ins. Co. (Mont. 1995), 903 P.2d 785, 787, 52 St.Rep. 990, 991 (citing Miller v. Frasure (1991), 248 Mont. 132, 137, 809 P.2d 1257, 1260). Substantial evidence is more than a mere scintilla of evidence but may be less than a preponderance of the evidence. Wilson, 903 P.2d

at 787.  We will not substitute our judgment for that of the **trial** court where the issue relates to the weight given to certain evidence or the credibility of the witnesses.  <u>Wilson,</u> 903 P.2d at 787 (citing Burns v. Plum Creek Timber Co. (1994), 268 Mont. 82, 84,  885 P.2d 508, 509); Rose v. Burdick's Locksmith (1994), 265 Mont. 178, 180-81, 875 P.2d 337, 339.

The Workers' Compensation Court determined that State Fund satisfied its burden of proving that Taylor committed actual fraud. To sustain a claim of fraud, State Fund was required to plead and prove each of the nine elements of fraud.  Haag v. Montana Sch. Group Ins. Auth. (Mont. 1995), 906 P.2d 693, 697, 52 St.Rep. 1146, 1149.  Fraud can never be presumed but must be proved by a preponderance of the evidence.  Barrett v. Holland & Hart (1993), 256 Mont. 101, 106, 845 P.2d 714, 717 (citing Batten v. Watts Cycle & Marine (1989), 240 Mont. 113, 117, 783 P.2d 378, 381, <u>cert. denied,</u> 494 U.S. 1087 (1990)).  The court found that, as to the November 15, 1990 and March 4, 1991 claims, State Fund satisfied its burden and proved each of the nine elements of fraud.  The elements are:  (1) a representation;  (2) falsity of the representation;  (3) materiality of the representation;  (4) speaker's knowledge of the falsity of the representation or ignorance of its truth;  (5) the speaker's intent it should be relied upon;  (6) the hearer's ignorance of the falsity of the representation;  (7) the hearer's reliance on the representation;  (8) the hearer's right to rely on the representation; and (9) the hearer's consequent and proximate injury caused by the reliance on

the representation. Lee v. Armstrong (1990), 244 Mont. 289, 293, 798 P.2d 84, 87; Batten, 783 P.2d at 380-81.

The court noted that Taylor made specific statements acknowledging that two of his claims were fraudulent. While the court recognized that "it is ultimately [Taylor's] word against the words of Larain and Beebe, I found the latter witnesses to be credible and believable. Ultimately, however, this case doesn't rely solely on their evidence. The finding of fraud is supported by other significant evidence." The court made extensive findings relating to the medical evidence, the testimony of the witnesses, and the credibility of the witnesses.

Taylor asserts that State Fund did not rebut the testimony of the numerous physicians who have treated Taylor for his multiple injuries. The findings of the Workers' Compensation Court, however, reflect otherwise. The court's findings indicate that several of Taylor's treating physicians could not find an objective basis for Taylor's pain complaints and, further, that Taylor's pain complaints were abnormal and that his subjective complaints were out of line with the objective medical findings. Nonetheless, Taylor argues that the medical testimony regarding his injuries was "unrefuted" and should not be disregarded based on the testimony of Larain and Beebe. However, in its order supplementing findings of fact and otherwise denying claimant's post-trial motions, the court noted that "there is nothing in the medical evidence to indicate an acute injury as opposed to long term degeneration, or, other than Taylor's own report, to prove that his back problems stemmed from

7

an industrial accident." Further, the court noted that:

> Significantly, claimant testified about cuts and scratches he had when he went to the hospital on March 4th, even mentioning a "pretty good nick on the side of my head or maybe in my jaw area." (Tr. II at 112.) His complaints of hip pain changed from the left side on March 4, to the right side on March 11th. He insisted on hospitalization and claimed he could not perform ordinary tasks of daily living. Yet, the medical records and testimony of the physicians who examined him show that they did not see any objective evidence of any injury.

Thus, even without Beebe's and Larain's testimony there is evidence in the record which casts doubt on Taylor's claims of industrial injuries.

According to Taylor, both Larain's and Beebe's testimony should be disregarded because Larain and Beebe, who were friends with one another and acquaintances of Taylor's, had a motive to testify against Taylor because of a dispute regarding some money Taylor allegedly took from Beebe. Taylor asserts that the Workers' Compensation Court erred in finding that Larain's and Beebe's testimony was credible. However, this Court will not substitute its judgment for that of the trial court on questions of witness credibility when substantial credible evidence supports the trial court's determination. Wilson, 903 P.2d at 787. Here, the findings of fact and the record reflect that the court could have found these witnesses to be truthful in some areas of their testimony and untruthful in others. The trial court was in the best position to judge the credibility and demeanor of the witnesses while testifying. Where there is conflicting evidence in the record, it is within the provence of the trial court to pass on the credibility of witnesses and the sufficiency of the evidence.

8

Wilson, 906 P.2d at 787-88.

Beebe stated that, following the March 4, 1991 injury, he saw Taylor working on his car and replacing the drive line. Beebe testified that the parts weighed between seventy and eighty pounds and that Taylor worked at this heavy labor for over four hours. Taylor testified that the part weighed approximately twenty pounds and that he would have completed the job much more quickly but for his injuries. Larain testified that Taylor was very interested in, and asked questions about, her own workers' compensation claim and confided in her that his claims were fraudulent. Taylor denies that he made any such admissions to Larain.

The findings reflect Taylor's inconsistent explanations of how the March 4, 1991 incident occurred. For example, Taylor's ex-wife testified that Taylor told her that he had injured his back operating a jack-hammer. Larain testified that Taylor told her that he had tripped over some road cones, and Beebe testified that Taylor told him that he slipped on some road oil and fell.

As to Taylor's own testimony, the court found that "claimant has made as great a negative impression on me as any witness I have observed during the last two years. Listening to him and observing him, I simply did not believe him and concluded that he was perpetuating a fraudulent scheme." In its order supplementing findings of fact and otherwise denying claimant's post-trial motions, the court also noted that "Taylor's confident, forceful testimony at trial stood in stark contrast to the complaining, depressed, non-functional individual who appears in the many

9

medical and psychological records presented in this case. . . He had a smooth answer for everything presented against him."

The Workers' Compensation Court findings also reflect evidence and testimony showing that Taylor had been reprimanded at work and placed on probation for his performance, had a problem with alcohol abuse, had received citations for DUI's, was in "severe financial straits," was having his wages attached by creditors, and owed both the Internal Revenue Service and the State of Montana for unpaid taxes. Taylor maintains that, regardless of his financial situation and job performance, he did indeed suffer industrial injuries. Our standard, however, is not whether the evidence supports findings different than those made by the Workers' Compensation Court, but whether substantial credible evidence supports the court's findings. Wilson, 903 P.2d at 787 (citing Caekaert v. State Compensation Mut. Ins. Fund (1994), 268 Mont. 105, 110, 885 P.2d 495, 498). In the instant case, we conclude that substantial credible evidence in the record supports the findings of the Workers' Compensation Court that two of Taylor's three claims were fraudulent.

2. Did the Workers' Compensation Court err when it failed to find that the insurer's conduct was unreasonable and in failing to award Taylor his attorney's fees, costs, and the statutory penalty?

Although the court found that two of Taylor's three claims were fraudulent, Taylor nonetheless asks this Court to find State Fund's conduct unreasonable under § 39-71-611, MCA, and award the twenty-percent statutory penalty against State Fund pursuant to § 39-71-2907, MCA. Reasonableness is a question of fact. Stordalen

10

v. Ricci's Food Farm (1993), 261 Mont. 256, 258, 862 P.2d 393, 394. We must determine whether substantial credible evidence supports the court's finding that State Fund's actions were reasonable and that Taylor was not entitled to the statutory penalty.

The statutory penalty set forth in § 39-71-2907, MCA, was not intended to eliminate an insurer's assertion of a legitimate defense to liability. Paulson v. Bozeman Deaconess Found. Hosp. (1984), 207 Mont. 440, 444, 673 P.2d 1281, 1283. Here, State Fund pled and proved the nine elements of fraud in defending its decision to terminate Taylor's benefits. Further, the court determined that State Fund's actions were not unreasonable and that Taylor was not entitled to attorney's fees or the statutory penalty. As is illustrated by the court's findings that two of Taylor's three claims were fraudulent, substantial credible evidence supports the court's finding that State Fund's actions in terminating Taylor's benefits were reasonable. Accordingly, we conclude that the Workers' Compensation Court did not err in failing to award attorney's fees, costs, or the statutory penalty.

Affirmed.

_____
Justice

We Concur:

_____

_____

11



_____
Justices

Justice William E. Hunt, Sr. specially concurs

I concur in the conclusions reached by the majority but do not agree with all that is said in the opinion.

_____
Justice

13