No. 96-365

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

ALEXANDRA ENGLER HAMMER,

      Petitioner and Appellant,

  v.

UNINSURED EMPLOYERS' FUND,

      Respondent and Insurer for

ROBERT HELMS, d/b/a MOSTLY
MONTANA CONSTRUCTION,

      Employer and Respondent.

FILED

DEC 27 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   Workers' Compensation Court, State of Montana
              The Honorable Mike McCarter, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          David W. Lauridsen, Laurie Wallace; Bothe &
          Lauridsen, Columbia Falls, Montana

      For Respondents:

          Kevin M. Braun, Chief Legal Counsel, Department
          of Labor & Industry, Helena, Montana

          Richard DeJana, Attorney at Law, Kalispell,
          Montana


Submitted on Briefs:  October 24, 1996

Decided:  December 27, 1996

Filed:

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Alexandra Engler Hammer (Hammer), appeals from the decision of the Workers' Compensation Court, denying her request for benefits from the Uninsured Employers' Fund (UEF). We affirm.

We restate the issue as follows:

Was Hammer's employment exempted from workers' compensation coverage under § 39-71-401, MCA?

## BACKGROUND

At age 11, Hammer's parents died and she went to live with her mother's brother, Earl Gorin (Earl), and his wife, Mary Alexine (Mary). After Mary and Earl divorced, Hammer continued to live with Mary. In 1989, when Hammer was 15 years old, Mary married Robert Helms (Helms), the owner and sole proprietor of Mostly Montana Construction (MMC). Although Helms did not adopt Hammer, he treated her as a member of the family and supplied her with all necessities.

In 1992, Hammer turned 18 years old, dropped out of school, and moved in with her boyfriend. Later that year, Hammer was arrested and jailed for writing bad checks. While in jail, Hammer contacted Helms and asked him if she could live with him. Hammer was released on her own recognizance based on her agreement to abide by a list of conditions. The list of conditions included:

1. She [Hammer] shall live with Bob Helms at [Helms' Address], Kalispell, Montana.

2. She shall follow the rules set for her by Bob Helms as a condition of residing in his home including:

a. Curfew.

2

```
b.    Household duties.
c.    Who can be brought into his home.
d.    Who [Hammer] associates with.
```

Dated Sept. 25, 1992
/S/ [Hammer]

In addition to establishing the above rules, Helms spoke with Hammer about the necessity of finding a job in order for her to make restitution on her bad checks. Helms also contacted the state Job Service and arranged an appointment for Hammer to meet with an adviser. In the meantime, Helms insisted that Hammer go to work with him and pick up debris around various construction job sites so she could "earn her keep." Helms explained that in past dealings with Hammer and his own children, he had used the phrase "earn your keep" to indicate that he would not be paying them.

Hammer had worked for Helms on two previous occasions. On the first occasion, Hammer was paid a lump sum amount to complete a painting project. On the second occasion, Hammer worked to pay off a debt she owed as a result of Helms having purchased a dress for her. Both times, the terms of the agreement between Helms and Hammer were predetermined and the arrangement was temporary.

Hammer testified that after she was released to live with Helms, she thought she would be paid between $4.00 and $5.00 per hour for work she performed for him. However, she conceded no discussion of an hourly rate occurred. During her second day of work for Helms, Hammer fell while she was caulking the eaves of a house. Hammer suffered serious injuries to her back including a C-7 burst fracture, T11-12 burst fractures, and an L-4 burst fracture

3

with 90% canal compromise. Following her release from the hospital, Hammer stayed at Helms' house while she recovered.

While recovering from her injuries, Hammer was contacted by James A. Haynes (Haynes), an attorney for the Western Montana Mental Health Center (MHC). Mary was employed with MHC and claimed Hammer as a dependent daughter on her health insurance policy, The MHC had become involved in the case because Hammer had filed an insurance claim for $44,000 with MHC's insurance company. After reviewing the case with Hammer, Haynes told her that he thought she was an employee of MMC and therefore qualified for workers' compensation benefits. Haynes notified the Department of Labor & Industry of the accident, of the fact that MMC was an uninsured employer, and asked the Department of Labor & Industry to look into the matter.

In response to Haynes' inquiry, the UEF sent separate letters to Helms and Hammer requesting that they return the enclosed forms. Fearing that he may be subject to a fine, Helms contacted his attorney who drafted letters for both Helms and Hammer explaining that Hammer was not an employee at the time of her accident. Helms informed Hammer that if she did not sign the letters he would be assessed a fine. Hammer eventually signed the letter. Based in part on Hammer's letter, the UEF denied Hammer's request for benefits on the grounds that she was not an employee.

Following the UEF's denial of Hammer's claim, Haynes wrote the UEF asking that it reconsider its decision. Since Hammer had not filed a written claim within the requisite 12 months, the UEF did

4

not look into the matter. Hammer then retained counsel who instituted waiver proceedings before the Department of Labor & Industry, Employment Relations Division, Dispute Resolution Bureau. In those proceedings, Hammer requested an extension of time in which to file the claim alleging that Helms' coercion of Hammer should estop him and the UEF from asserting a statute of limitations defense. This request was denied and the matter was appealed to a hearings officer. On appeal, the hearings officer found that Helms' misrepresentation to Hammer that she was not an employee was the cause of her failure to timely file a claim and thus an extension of time was warranted. This decision was not appealed and Hammer filed a claim for workers' compensation benefits.

Following a hearing on the merits of the case, the Workers' Compensation Court held that although Hammer was an employee, the fact that she did not have a reasonable expectation that payment would exceed room and board exempted her employment from workers' compensation coverage under § 39-71-402(2)(h), MCA. Hammer appeals the decision of the Workers' Compensation Court.

## DISCUSSION

**Was** Hammer's employment exempted from workers' compensation coverage under § 39-71-401, MCA?

This Court employs two standards of review for Workers' Compensation Court decisions: We review the findings of fact to determine if they are supported by substantial, credible evidence, and we review conclusions of law to determine if they are correct.

Turjan v. Valley View Estates (1995), 272 Mont. 386, 390, 901 P.2d 76, 79.

In the instant case, Hammer contends that she, like any other employee, had a reasonable expectation of payment. Helms, on the other hand, maintains that Hammer's expectations of compensation were not reasonable and compensation for her work extended no further than room and board. In its findings of fact, the Workers' Compensation Court found Helms' testimony to be more consistent and more credible than Hammer's. The Workers' Compensation Court specifically noted that Hammer testified at a Department of Labor hearing, in her affidavit, in her deposition, and at trial; each time her story differed. The court contrasted these inconsistencies with Helms' consistent testimony that he merely brought Hammer to work to "keep an eye on her" and so she could "earn her keep."

When conflicting testimony exists, it is within the province of the trial court to determine the credibility of witnesses as well as the sufficiency of the evidence. Taylor v. State Compensation Insurance Fund (1996), 275 Mont. 432, 437, 913 P.2d 1242, 1246 (citing Wilson v. Liberty Mut. Fire Ins. Co. (1995), 273 Mont. 313, 317, 903 P.2d 785, 787-88). In this case, as in Taylor, the Workers' Compensation Court was faced with conflicting testimony. In such cases, our standard is not whether the evidence supports findings different than those made by the Workers' Compensation Court, but whether substantial credible evidence supports the court's findings. Taylor, 913 P.2d at 1246. In the

6

instant case, we find that the Workers' Compensation Court's determination that Hammer did not have a reasonable expectation of being paid is supported by credible evidence.

Section 39-71-401(2)(h), MCA, provides:

> (2) Unless the employer elects coverage for these employments under this chapter and an insurer allows an election, the Workers' Compensation Act does not apply to any of the following employments:
> . .
> (h) employment of a person performing services in return for aid or sustenance only, except employment of a volunteer under 67-2-105[.]

In arguing that she does not fit under this exception, Hammer cites to Carlson v. Cain (1983), 204 Mont. 311, 664 P.2d 913. In Carlson, Debra Carlson's (Carlson) fiance had entered into a contract with the Billings Gazette to deliver newspapers from Billings, Montana, to Fairview, Montana, and all drop points in between. While living with her fiance, Carlson began making deliveries three or four times a week to assist him in his contractual obligations to the Gazette. Carlson, 664 P.2d at 914. When Carlson was unable to make the deliveries, her fiance had to hire someone else, whom he paid $15 to $30. Carlson, 664 P.2d at 915. While delivering newspapers for her fiance, Carlson was severely injured in an auto accident.

In Carlson, this Court upheld the following Workers' Compensation Court findings: that Carlson was an employee of her fiance; that Carlson's employment was not excluded under statutory exceptions; and that there was sufficient evidence to sustain the Workers' Compensation Court's finding that Carlson's fiance was an employee of the newspaper despite language in the contract and the

7

fact that the newspaper disclaimed having control. Carlson, 664 P.2d at 918-20.

In Carlson, this Court explained that employment status can be established by the existence of a contract for hire, and that such an employment contract may be "express or implied, oral or written." Carlson, 664 P.2d at 916 (quoting § 39-71-118, MCA). This Court explained that Carlson was not just doing housework and cooking in exchange for room and board, rather she was working virtually full time outside the home and her reasonable expectations exceeded room and board. Carlson, 664 P.2d at 919. In Carlson, this Court held that an implicit agreement existed between Carlson and her fiance because Carlson furnished valuable driving services to her fiance and reasonably expected payment beyond those benefits which were just a part of her living arrangement.

In the instant case, Hammer argues that she, like Carlson, furnished valuable services to her employer and had a reasonable expectation she would be paid. However, the Workers' Compensation Court found that Hammer's expectations were limited to her obligation to offset room and board for herself. The Workers' Compensation Court points to the consistent testimony of Helms that Hammer was merely "earning her keep" and thus any expectation of compensation was not reasonable. In contrast, Carlson and her fiance had an implicit agreement that she would receive some benefit for her services above and beyond room and board. Carlson, 664 P.2d at 919.

8

At the time of her accident, Hammer was merely "earning her keep" for the room and board she received from Helms. Hammer's work with Helms was a temporary arrangement which was to continue only until she was able to find a paying job through the Job Service. In contrast to previous work arrangements, Helms and Hammer had not specifically agreed to anything other than room and board. Indeed, Helms had made Hammer aware that she would be "earning her keep." The Workers' Compensation Court's factual findings are supported by substantial credible evidence and they indicate that Hammer did not have a reasonable expectation of monetary compensation. Rather, she was performing services at the job site in return for aid and sustenance. We hold that Hammer's employment falls under the exception set forth in § 39-71-401(2)(h), MCA, exempting her from coverage.

Accordingly, we affirm the decision of the Workers' Compensation Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices