No. 04-323

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 175

RANDALL SIMMS,

   Petitioner and Appellant,

  v.

STATE COMPENSATION INSURANCE FUND,

   Respondent and Respondent.

APPEAL FROM:  The Workers' Compensation Court, Cause No. 2003-0852,
       Honorable Mike McCarter, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

   For Respondent:

     Thomas E. Martello, Legal Counsel, Helena, Montana

         Submitted on Briefs: October 6, 2004

            Decided: July 12, 2005

Filed:

    _____
           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Randall Simms (Simms) appeals from a judgment entered by the Workers' Compensation Court (WCC) on March 15, 2004, dismissing, without prejudice, Simms' petition to require the Montana State Fund (State Fund) to furnish him a handicapped accessible van. We affirm.

¶2     We address the following issue:

¶3     Did the WCC err by denying the claimant's petition for provision of a handicapped accessible van?

## FACTUAL AND PROCEDURAL BACKGROUND

¶4     On May 3, 1999, while working as a glazier for Bozeman Glass, Simms suffered a laceration to the radial artery of his right forearm. Immediately following his injury, Simms was treated at the Bozeman Deaconess Hospital emergency room where the laceration was repaired. The following day, May 4, 1999, Simms developed volar compartment syndrome, which was treated with a fasciotomy, arterial repair and secondary closure. Subsequently, Simms developed complex regional pain syndrome (CRPS), also known as reflex sympathetic dystrophy (RSD). At the time of the injury, Bozeman Glass was insured by State Fund, who has accepted liability for Simms' industrial injury.

¶5     RSD is a malfunction of the central nervous system which involves the sending of abnormal pain signals from non-painful stimulae. RSD initially affected Simms' arms and was treated by the implantation of a spinal cord stimulator in his cervical area, but the condition thereafter progressed to his legs and a second spinal cord stimulator was implanted

2

near his lumbar spine. Although Simms is primarily confined to a wheelchair, Dr. John C. Oakley (Dr. Oakley) testified that Simms is able to make some standing transfers.[1] Dr. Oakley, who testified by deposition, is a board certified specialist in neurosurgery and pain management and has treated Simms since 1999.

¶6 In late January 2002, at the request of State Fund, Simms was examined at Progressive Rehabilitation Associates (PRA) in Portland, Oregon. Simms went through a four-week out-patient multi-disciplinary pain management program to determine an appropriate treatment plan to help him function. PRA diagnosed Simms' whole person impairment to be 71 percent, but determined that he was capable of performing full-time sedentary work. PRA also indicated a vehicle with a wheelchair lift would be very helpful in assisting Simms with his transportation needs, and would give him the opportunity to get out of the house more often. Dr. Oakley concurred with Simms' diagnosis, but disagreed with PRA's determination that Simms was employable, deeming him permanently totally disabled.

¶7 On July 30, 2002, Dr. Oakley wrote a prescription for a handicapped accessible van, noting Simms' need for physical therapy in Bozeman and follow-up visits in Billings every one to three months. Dr. Oakley testified that a van would help Simms obtain psychiatric counseling, if an appropriate psychological resource was found, and further stated a van would enable Simms to get out more, thereby improving his mental health.

---

[1]While Simms takes issue with this finding in a footnote, he does not challenge the finding with argument, stating only that the "error is of little or no import."

¶8    Simms is now deemed permanently totally disabled with no reasonable prospect of performing gainful employment. Although Simms suffered a vertebral compression fracture in the summer of 2003, Dr. Oakley testified that Simms remains at maximum medical improvement (MMI) and there is no curative treatment for RSD on the horizon. Simms' compression fracture was due to bone density loss, a result of his immobility, and, as a result, he needs physical therapy three times a week to minimize bone density loss. Bozeman is the nearest appropriate physical therapy facility, because in-home therapy and treatment in Livingston are unavailable, due to the type of exercise equipment needed.

¶9    Simms' present transportation, outside of his home, is by wheelchair and car. In good weather he is able to drive the wheelchair on and across Livingston streets. While Simms is unable to drive a van or any other vehicle, he does own a car and utilizes the car to travel from his home. Since Simms cannot drive, his wife, after Simms transfers to the car, loads the portable wheelchair and drives the car. Simms goes out in the car six to seven times a month to shop or just for a "drive." Livingston also has a public wheelchair accessible van, but Simms states the public van's schedule makes it inconvenient for him to use, and in snowy weather, the van will not come up the road to his house. Simms offers that he has difficulty making medical appointments due to transportation issues, but he has not asked State Fund to arrange transportation for medical services. Rather, Simms requested State Fund to buy him a handicapped accessible van, which it has denied, resulting in the present proceeding.

¶10 A hearing was held on December 17, 2003. On March 15, 2004, the WCC issued its findings of fact, conclusions of law and judgment concluding that Simms was not entitled to a handicapped accessible van to be furnished by State Fund. The WCC dismissed the petition without prejudice, noting that "future circumstances could conceivably justify a renewed request." Simms appeals.

## STANDARD OF REVIEW

¶11 This Court employs two standards of review for decisions of the WCC. We review the findings of fact to determine if they are supported by substantial credible evidence, and we review conclusions of law to determine if they are correct. *Hiett v. Missoula County Public Schools*, 2003 MT 213, ¶ 15, 317 Mont. 95, ¶ 15, 75 P.3d 341, ¶ 15 (citing *Geiger v. Uninsured Employers' Fund,* 2002 MT 332, ¶ 13, 313 Mont. 242, ¶ 13, 62 P.3d 259, ¶ 13). In *S.L.H. v. State Compensation Mut. Ins. Fund*, 2000 MT 362, 303 Mont. 364, 15 P.3d 948, this Court defined substantial evidence necessary to support a finding of fact as:

> "[E]vidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."

*S.L.H.*, ¶ 42 (quoting *Swain v. Battershell*, 1999 MT 101, ¶ 34, 294 Mont. 282, ¶ 34, 983 P.2d 873, ¶ 34).

## DISCUSSION

¶12 *Did the WCC err by denying the claimant's petition for provision of a handicapped accessible van?*

¶13 This case is governed by the 1997 version of the Montana Workers' Compensation Act, the law in effect at the time of Simms' industrial accident. *Buckman v. Montana Deaconess Hospital* (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. Simms bears the burden of proving by a preponderance of the evidence that he is entitled to the benefits sought. *Ricks v. Teslow Consolidated* (1973), 162 Mont. 469, 512 P.2d 1304.

¶14 While Simms maintains the WCC erred in concluding that State Fund did not have to furnish him a handicapped accessible van to travel to and from medical appointments, State Fund contends that § 39-71-704(1)(d), MCA (1997), unequivocally provides that an insurer is not liable for a claimant's transportation for medical appointments, except for those appointments requested by the insurer. The statute provides:

> The insurer shall reimburse a worker for reasonable travel expenses incurred in travel to a medical provider for treatment of an injury *only if* the travel is incurred *at the request of the insurer*. Reimbursement must be at the rates allowed for reimbursement of travel by state employees. [Emphasis added.]

¶15 Relying on this provision, and noting the directive that, "[i]n the construction of a statute, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted," § 1-2-101, MCA, the WCC held as follows:

> Under [§ 39-71-704(1)(d), MCA (1997)] the insurer is not liable for travel expenses except to appointments it requests. Purchase of a van for travel to and from medical appointments stands on no better ground than any other form of travel. Therefore, I conclude that the section affirmatively excludes liability for a van based on the claimant's need to travel to and from medical appointments.

6

This Court must discern the intent of the legislature from the text of the statute when the words are clear and plain. *S.L.H.*, ¶ 17. We concur with the WCC's conclusion of law. To hold Simms' attendance at medical appointments is "at the request of the insurer" simply because the medical care is legitimate would impose a travel expense obligation on State Fund that contradicts the plain wording and meaning of the statute.

¶16 However, Simms also argues that provision of a handicapped accessible van is authorized by the statutory provisions providing for payment of necessary medical treatment. These provisions, found in § 39-71-704, MCA (1997), state in pertinent part:

> (1) In addition to the compensation provided under this chapter and as an additional benefit separate and apart from compensation benefits actually provided, the following must be furnished:
> (a) After the happening of a compensable injury and subject to other provisions of this chapter, the insurer shall furnish reasonable *primary medical services* for conditions resulting from the injury for those periods as the nature of the injury or the process of recovery requires.
> (b) The insurer shall furnish *secondary medical services* only upon a clear demonstration of cost-effectiveness of the services in returning the injured worker to actual employment. [Emphasis added.]

¶17 Simms maintains the WCC erred in reaching the conclusion that he was not entitled to a handicapped accessible van because the duty to provide "primary medical services" is the principal obligation of each employer, which forms the foundation for the *quid pro quo* underlying the Workers' Compensation Act. Simms notes that § 39-71-704(1)(a), MCA (1997), provides that medical services are "an additional benefit separate and apart from compensation benefits" provided elsewhere in the statute. He argues § 39-71-704(1)(d), MCA (1997), which requires an insurer to pay for reasonable travel expenses to a medical provider only if requested by the insurer, does not affirmatively exclude liability for

7

handicapped accessible transportation if such transportation can be said to meet the definition of "primary medical services" as defined in §§ 39-71-704(1)(a) and 39-71-116(26), MCA (1997). Simms asserts that a handicapped accessible van falls under the definition of "primary medical services," because a van is a medical appliance necessary to sustain MMI.

¶18 We initially note that the statute requires provision of "secondary medical services" only upon a showing that they enable a worker to return to actual employment. Neither party disputes that Simms is permanently totally disabled and is unable to return to work, and, thus, "secondary medical services" under § 39-71-704(1)(b), MCA (1997), are inapplicable. While "secondary medical services" does include medical services or appliances within the scope of treatment, "treatment" under "primary medical services" is not defined. "Primary medical services" itself is defined as the "treatment prescribed by a treating physician, for conditions resulting from the injury, necessary for achieving medical stability." Section 39-71-116(26), MCA (1997). In *Hiett*, this Court addressed "primary medical services," and interpreted the Act as follows:

> [T]he phrase "achieving" medical stability and "achieved" medical stability as used in §§ 39-71-116(25) and 39-71-704(1)(f), MCA (1995), respectively, [means] the *sustainment* of medical stability. Given this interpretation, a claimant is entitled to such "primary medical services" as are necessary to permit him or her to *sustain* medical stability.

*Hiett*, ¶ 35 (emphasis in original).

¶19 However, even if this Court would conclude that a handicapped accessible van is a "treatment" that could qualify as "primary medical services," Simms would nonetheless need

8

to carry his burden to prove that a handicapped accessible van is necessary for medical reasons, and not merely for transportation. The WCC noted the proof that was required, and concluded that Simms had failed to carry his burden:

> [T]here are obstacles even under the primary medical services rule. First, as already noted, the claimant must prove that a van is necessary for reasons other than transportation to and from medical appointments. Second, he must demonstrate that the van is necessary for him to "sustain" MMI. Third, he must show it is in fact medically necessary. He has satisfied none of these requirements.

¶20 Simms maintains the WCC erroneously concluded, against substantial credible evidence, that a handicapped accessible van is not a "primary medical service." He argues that the WCC's finding that he failed to prove handicapped accessible transportation was medically necessary for him to sustain MMI is contrary to two medical opinions and the overwhelming evidence. He refers to evidence that he misses treatment appointments, is forced to consult with medical providers by telephone, and his physical condition is deteriorating due to immobility and an inability to travel to Bozeman and Billings for treatment.

¶21 State Fund replies that the WCC's findings are supported by substantial credible evidence and that the court's conclusions of law are correct. Specifically, State Fund argues that a handicapped accessible van is neither a primary nor a secondary medical service under § 39-71-704(1), MCA (1997), and, in any event, Simms will not relapse into a non-MMI state without a van. Noting Dr. Oakley's testimony, State Fund argues that, at most, a van would promote Simms' general mental health by allowing him to leave home more often, and would be an added convenience. Lastly, State Fund contends there are several transportation

9

alternatives available to Simms, including his personal automobile, a public wheelchair accessible van, and the motorized wheelchair he uses within Livingston, weather permitting.

¶22   The WCC concluded that Simms failed to prove by a preponderance of evidence that a handicapped accessible van qualified as a "primary medical service," because Simms did not establish the van was medically necessary to sustain his MMI. The WCC determined:

> Medical necessity also encompasses a requirement that the treatment be reasonable . . . .
>
> [T]he claimant already has a means of transportation available to him and is able to use it. He and his wife own a car. He is able to transfer into and out of the car and to take his portable wheelchair with him.
>
> . . . .
>
> Moreover, the claimant has not shown that alternative transportation is not available. There is a publically operated handicap accessible van available to him.

¶23   Dr. Oakley did not testify how a handicapped accessible van is necessary for Simms to maintain his MMI status, or indicate how the lack of a van would cause Simms' status to deteriorate. As the WCC noted, the fact that Dr. Oakley wrote a prescription and recommended a van is not conclusive as to medical necessity. Dr. Oakley's opinion that a handicapped accessible van would allow Simms to get away from his house and improve his mental health is insufficient to establish that a van is necessary for sustainment of MMI. The question is not what might generally improve Simms' mental health and well-being, but what is medically necessary.

¶24   Although Dr. Oakley did testify that a handicapped accessible van would make Simms' transfers more convenient, and, certainly, a handicapped accessible van would

provide more convenient transportation for Simms, convenience is not synonymous with necessity. Dr. Oakley testified Simms is able to do some standing transfers, meaning he is able to stand up and move from his wheelchair to a car seat and vice-versa, thereby allowing Simms to travel in the car he currently owns, as he presently does several times a month to shop and take drives with his wife, in addition to medical appointments. Moreover, Simms is unable to drive, and, therefore, the purchase of a handicapped accessible van would not alleviate his need for a driver or his wife's assistance.

¶25 Alternative means of transportation are also available to Simms. While the public handicapped accessible van may not be able to go up the road to Simms' house in bad winter weather, the WCC found that Simms had provided no details as to how often that occurs and concluded that it was "unpersuaded that the public van is unavailable during the entire winter, or even for significant periods of time."

¶26 We conclude that the WCC's factual findings were supported by substantial credible evidence, and that the WCC's conclusion of law that Simms is not entitled to have State Fund furnish him with a handicapped accessible van is correct.

¶27 Lastly, Simms offers that insurers have an affirmative duty to investigate workers' compensation claims and, in the absence of such an investigation, the denial of a claim for benefits is unreasonable, citing *S.L.H.*, ¶ 50. He notes that State Fund failed to ask its peer review doctor about his request, failed to write the treating physician or panel for clarification, and failed to seek a second opinion from another provider, and, therefore,

asserts that a 20 percent penalty should be assessed against State Fund pursuant to § 39-71-2907, MCA, based on these failures.

¶28    Section 39-71-611, MCA, allows costs and attorney fees to be payable only on denial of a claim or termination of benefits later found to be compensable. Because Simms' claim was properly found not to be compensable, his request for penalties is denied.

¶29    The order of the WCC is affirmed, and Simms' request for attorney fees is denied.


/S/ JIM RICE


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART