DA 06-0826

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 357

MARIL BeVAN,

       Petitioner and Appellee,

  v.

LIBERTY NORTHWEST INSURANCE CORPORATION,

       Respondent/Insurer and Appellant.

APPEAL FROM:    The Workers' Compensation Court,
                      Cause No. WCC 2006-1665,
                      Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

       Larry W. Jones, Law Offices of Larry W. Jones, Missoula, Montana

       For Appellee:

       Leslae J. E. Dalpiaz, Leslae J. E. Dalpiaz, P.C., Missoula, Montana

Submitted on Briefs:  October 3, 2007

Decided:  December 21, 2007

Filed:

_____
                    Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    Liberty Northwest Insurance Corporation (Liberty) appeals from the judgment of the Workers' Compensation Court (WCC). We affirm.

¶2    We restate the issue as follows:

¶3    Did the WCC err when it concluded that BeVan's injury occurred during the course and scope of her employment?

**BACKGROUND**

¶4    On May 19, 2005, Maril BeVan (BeVan) was employed as a Blackfoot Telephone Communications (Blackfoot) customer sales and service representative in Missoula, Montana. BeVan had worked approximately five-and-a-half years for Blackfoot. Blackfoot employees received a paid fifteen-minute break in the morning, a paid fifteen-minute break in the afternoon, and an unpaid lunch break. Blackfoot employees were not required to take breaks on Blackfoot's premises and often went elsewhere during their breaks. To insure sufficient representatives were present to meet its customers' needs, Blackfoot maintained a timesheet that employees were supposed to log out on when they took a break. BeVan customarily took a one-hour lunch break from 1:00 p.m. to 2:00 p.m., a mid-morning break at approximately 11:15 a.m., and a mid-afternoon break between 3:15 p.m. and 3:45 p.m.

¶5    On May 19, 2005, BeVan was unable to take her mid-morning break at the usual time because she was busy assisting Blackfoot's customers. BeVan also knew that she was going to miss her usual lunch break because, on that day, Blackfoot required her to attend a meeting during her lunch break. BeVan took her mid-morning break at approximately 11:45 a.m. and drove from Blackfoot to her house to care for her dog.

2

BeVan planned on returning to Blackfoot within the fifteen-minute break period, but she was injured in a car accident on her return trip.

¶6    BeVan filed a workers' compensation claim for her injury. Liberty, Blackfoot's insurance provider, maintained that BeVan's injury did not occur within the course and scope of her employment, and it denied her claim for compensation. BeVan then filed a claim with the WCC seeking compensation for her injuries.

¶7    After considering BeVan's trial testimony, BeVan's deposition, and the deposition of Drew Arnot, BeVan's supervisor, the WCC determined that BeVan was injured during a paid fifteen-minute break. Because the court determined BeVan was injured during her break, the court applied the four factors set forth in *Carrillo v. Liberty Northwest Insurance* and ultimately concluded that her injury was compensable. 278 Mont. 1, 922 P.2d 1189 (1996). Liberty appeals.

## STANDARD OF REVIEW

¶8    We review the WCC's findings of fact to determine whether they are supported by substantial credible evidence, and we review the WCC's conclusions of law to determine whether they are correct. *Simms v. State Compen. Ins. Fund*, 2005 MT 175, ¶ 11, 327 Mont. 511, ¶ 11, 116 P.3d 773, ¶ 11. We apply the Workers' Compensation Act (the Act) effective at the time an employee suffers an injury. *Wilson v. Liberty Mut. Fire Ins.*, 273 Mont. 313, 316, 903 P.2d 785, 787 (1995). The 2003 version of the Act governed when BeVan was injured on May 19, 2005.

DISCUSSION

¶9 **I     Did the WCC err when it concluded that BeVan's injury occurred during the course and scope of her employment?**

¶10 Employees who receive an injury "arising out of and in the course of employment" are entitled to compensation. Section 39-71-407, MCA (2003). Liberty asserts that BeVan's injuries did not occur during the course and scope of her employment because BeVan had abandoned her employment and suffered her injuries while performing a personal errand, rather than during an authorized break. Liberty reasons that BeVan's failure to sign the log-out sheet when she left Blackfoot rendered her break unauthorized. Thus, Liberty contends that the WCC should have applied § 39-71-407(3), MCA (2003), which limits an insurer's liability for traveling employees, rather than the *Carrillo* factors. We review the WCC's factual findings and legal conclusions separately because the WCC's factual finding that BeVan was injured while on break determined which legal analysis it applied.

¶11 *A.     Does substantial credible evidence support the WCC's finding that BeVan was injured while on an authorized break?*

¶12 The factors set forth in *Carrillo* apply to injuries occurring during authorized breaks. *Carrillo*, 278 Mont. at 7, 922 P.2d at 1193. The WCC applied the *Carrillo* factors after concluding that BeVan was injured during her mid-morning break. The WCC's determination that BeVan's break was authorized is implicit in its application of *Carrillo*. We review this finding to determine if it is supported by substantial credible evidence. *Simms*, ¶ 11. Substantial credible evidence to support a finding of fact may be

less than a preponderance of evidence but must be more than a mere scintilla. *Simms*, ¶ 11.

¶13 Drew Arnot, BeVan's supervisor, testified that Blackfoot encouraged its employees to take breaks, even if the employees took breaks at times other than scheduled. Arnot testified that employees were not required to obtain supervisory approval before taking a break, but that the employees were responsible for ensuring that Blackfoot was adequately staffed. Arnot testified that employees were required to sign out on the timesheet when they took their break. Arnot described BeVan as "fairly consistent" about logging out and stated that he had no reason to reprimand her for neglecting to sign out. Arnot also testified that he was unaware of any Blackfoot policy governing whether employees could leave the premises while on break.

¶14 BeVan testified that she generally left Blackfoot's premises on her breaks and that, though Blackfoot had a break-area, a majority of the employees regularly left the premises to run errands, get food and coffee, or take walks in the neighboring area. BeVan testified that she was paid for these breaks. BeVan testified that on May 19, 2005, she postponed her mid-morning break because she was busy assisting customers and because Blackfoot had scheduled a meeting during her normal lunch break. She stated, that "to do [her] work duties, [her] schedule was juggled around to help the company." BeVan testified that she received Arnot's approval before leaving because she went on break later than usual. BeVan further testified that the log-out timesheet's purpose was administrative: representatives logged out to ensure appropriate floor-coverage to assist Blackfoot's customers. BeVan testified that she regularly logged out

and that she was unaware of an employee ever receiving a reprimand for failing to log out.

¶15 Liberty presented no evidence that filling out the log-out timesheet was a prerequisite to an authorized break or that the timesheet served any purpose other than administrative. Liberty presented no evidence that Blackfoot employees who failed to log out were not compensated for their breaks. Nor did Liberty present any evidence that employees who failed to log out received reprimands of any sort. We conclude that substantial credible evidence exists to support the WCC's finding that BeVan was injured while on an authorized paid fifteen-minute break.

¶16 *B.* *Did the WCC correctly conclude that BeVan's injury was compensable?*

¶17 Our conclusion that BeVan's injury occurred during an authorized break does not compel the conclusion that she suffered a compensable injury. We evaluate four factors to determine whether an employee's injury while on break is compensable: (1) whether the employee was paid during the break, (2) whether the employment contract entitled the employee to the break, (3) whether restrictions limited where the employee could go during the break, and (4) whether the employee's activity constituted a substantial personal deviation. *Carrillo*, 278 Mont. at 11-12, 922 P.2d at 1195-96. The WCC analyzed these factors and concluded that BeVan's injury arose during the course and scope of her employment and thus was compensable. We review the WCC's conclusions of law for correctness. *Simms*, ¶ 11.

¶18 Regarding the first and second *Carrillo* factors, the WCC heard testimony that clearly established that BeVan's injury occurred while on a paid break furnished by Blackfoot. Arnot testified that Blackfoot paid its employees for the morning and

6

afternoon breaks. He further testified that the paid breaks were an employee benefit and that Blackfoot encouraged its employees to take breaks. BeVan also testified that she was authorized to take breaks and that Blackfoot paid her for her morning and afternoon breaks. The WCC found that Blackfoot paid its employees during the allowed fifteen-minute breaks, and it found credible BeVan's testimony that her injury occurred during her paid fifteen-minute break; these findings weigh in favor of allowing compensation for an injury occurring during an authorized break.

¶19 We held in *Carrillo* that the third factor—restrictions limiting where the employee could go during the break—supported allowing compensation when an employer set "boundaries within which the break could be taken and set limitations on the duration of the breaks[.]" *Carrillo*, 278 Mont. at 11, 922 P.2d at 1196. We found significant in *Carrillo* that the employee previously had been asked to postpone her breaks, to take her breaks on the premises, and to return early from her breaks. We concluded that these boundaries and limitations favored allowing compensation because they amounted to restrictions limiting where employees could go during their breaks.

¶20 In this case, the WCC noted in its conclusions of law that both BeVan and Arnot testified regarding Blackfoot's set parameters for the allowed breaks, such as limiting the break's duration to fifteen minutes and requiring employees to ensure there was sufficient in-store coverage before going on break. Additionally, BeVan testified that customer service representatives would have to postpone breaks and occasionally received no breaks because "the customer always comes first." BeVan also testified that she had to make up the time if she returned more than a few minutes late from her break. Though Blackfoot did not require its employees to remain on the premises and apparently even

acquiesced in its employees leaving the premises, our inquiry of *Carrillo*'s third factor supports allowing compensation because Blackfoot set "boundaries within which the break could be taken and set limitations on the duration of the breaks" when it limited the duration of breaks to fifteen minutes and conditioned the availability of breaks on adequate coverage, occasionally resulting in postponement or loss of the break. *Carrillo*, 278 Mont. at 11, 922 P.2d at 1196.

¶21 The final factor concerns whether the employee's activity constituted a substantial personal deviation. *Carrillo*, 278 Mont. at 12, 922 P.2d at 1196. In *Carrillo*, an employee was injured while walking to a gift shop during her break. We noted that the employee knew what she needed and that her planned activities would be accomplished within her allotted break time. The employee also testified that her employer allowed employees to leave the premises and maintained inadequate break facilities. She further testified that she went on walks during 90 percent of her breaks. We held that the employee's activity was not a substantial personal deviation because she regularly walked on her breaks, she would have returned from break within the normal duration had she not suffered an injury, and because she went to the gift shop to purchase a gift for a work party. *Carrillo*, 278 Mont. at 12, 922 P.2d at 1196.

¶22 In this case, the WCC heard testimony from BeVan that she regularly left Blackfoot and went home on her breaks. The WCC heard testimony that Blackfoot had no policy restricting its employees from leaving the premises during breaks and that, though Blackfoot had a break-area, the majority of its employees actually left Blackfoot's premises during their breaks to run errands or walk in the neighboring areas. The WCC found that BeVan was unable to take her break at the usual time on May 19, 2005,

8

because she was assisting Blackfoot's customers. The WCC further found that BeVan was required to attend a work-related meeting during her normal lunch hour. BeVan testified that because of the meeting she was unable to take her normal lunch break, and thus, she used her mid-morning break to go home and care for her dog. BeVan testified that her work schedule was rearranged to help Blackfoot. Finally, BeVan testified that she was able to go home, care for her dog, and return to work within the allotted fifteen-minute break period.

¶23   We conclude that BeVan's activity was not a substantial personal deviation because she regularly left work on her breaks; she would have returned from break within the allotted fifteen minutes had she not been in a car accident; Blackfoot clearly acquiesced to its employees leaving the premises during break, regardless of the employees' activities; and because Blackfoot's convenience was the reason for BeVan's late break—she could not take her normal break because she was helping Blackfoot's customers, nor could she go home on her usual lunch break because Blackfoot required her to attend a meeting during that period. Our analysis of *Carrillo*'s fourth factor supports the District Court's conclusion that BeVan was injured during the course and scope of her employment.

¶24   On appeal, Liberty does not challenge the WCC's conclusions of law as to the *Carrillo* factors, but argues instead that we should employ alternate rules to decide this case. Specifically, Liberty contends that we should overrule *Carrillo* and, in its place, apply the "going and coming" rule, codified at § 39-71-407(3), MCA (2003), and our precedent from *Strickland v. State Compen. Mut. Ins. Fund*, 273 Mont. 254, 901 P.2d 1391 (1995). Section 39-71-407(3), MCA (2003), limits an insurer's liability for

employees injured while traveling. Liberty asserts that the *Carrillo* and *Strickland* holdings are inconsistent and disparages this Court for "rid[ing] out in two directions at the same time on the same issue – an injury while traveling."

¶25 We determined in *Carrillo* that, though applicable to lunch breaks, § 39-71-407(3), MCA, did not apply to breaks of shorter duration, such as coffee breaks; instead we adopted from Arthur Larson's Workers' Compensation treatise the four factors set out above to determine whether injuries sustained during shorter breaks fall within the course and scope of employment. Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* vol. 1, § 13.05[4], 13-62 (Matthew Bender 2007) [hereinafter *Larson's*]; *Carrillo*, 278 Mont. at 8, 12, 922 P.2d at 1194, 1196. *Larson's* notes that the "going and coming" rule properly applies to lunch breaks because the duration "is so substantial and the employee's freedom of movement so complete that the obligations and controls of employment can justifiably be said to be in suspension during this interval." *Larson's* at § 13.05[4], 13-61. Coffee breaks and the like, however, present a closer question. *Larson's* at § 13.05[4], 13-61. We adopted the four-factor inquiry from *Larson's* to address the close questions presented by injuries occurring during authorized breaks. The operative principle of the four-factor inquiry focuses on whether the employer retains authority over the employee during the shorter break periods. *Larson's* at § 13.05[4], 13-62. The holdings of *Carrillo* and *Strickland* are different because the cases presented different factual scenarios, not because, as Liberty suggests, this Court is developing parallel lines of authority. The WCC applied the correct law in effect at the time of BeVan's injury, and we decline Liberty's plea to overrule *Carrillo*.

10

¶26 *Strickland*, similarly, is inapplicable to this case because the WCC in *Strickland* found as a threshold matter that the employee in that case was injured while on a personal errand, not while on an authorized break. We concluded that substantial evidence supported the WCC's finding that Strickland was injured while on a personal errand, and thus, we applied § 39-71-407(3), MCA, to determine whether her injury occurred during the course and scope of her employment and ultimately concluded that it did not. *Strickland*, 273 Mont. at 259, 901 P.2d at 1394. In this case, the WCC made a finding of fact that BeVan was on an authorized break; thus, the *Carrillo* factors are triggered rather than § 39-71-407(3), MCA (2003).

¶27 Liberty generally asserts throughout its brief that BeVan's injury cannot be considered to arise out of the course and scope of her employment because she left Blackfoot to care for her dog. Liberty further directs us to *Larson's* which instructs that even injuries occurring during authorized breaks may not be compensable:

> The fact that the coffee break or rest period is a paid one, or for any other reason might be presumptively within the course of employment, does not of course mean that anything that happens during that span of time is compensable. If the employee uses the interval, not for its basic purpose of rest and refreshment, **but for personal errands**, such as cashing a check at a bank, or doing some shopping for Christmas, or getting a tuberculin shot checked, the employee leaves the scope of employment if the deviation is such as to be called substantial.

*Larson's* at § 13.05[4], 13-66 (footnotes omitted) (emphasis added by Liberty). We agree that employees who substantially deviate from their employment and suffer injuries while on an authorized break are not entitled to compensation; the fourth *Carrillo* factor addresses this concern. Further, we note that the sentence following the *Larson's* quote provided by Liberty states that a swim taken during a coffee break may be compensable,

11

"in part because the refreshing effects of the swim would benefit the employer as well as the employee by enhancing the employee's efficiency." *Larson's* at § 13.05[4], 13-66 (footnote omitted). Thus, when considering whether an employee has substantially deviated from the scope of employment, our focus properly encompasses both the employee's activity and the benefits the employer derives. Liberty's grievance that BeVan's injury should not be compensable solely because she was caring for her dog completely ignores Blackfoot's break policies and the benefits that Blackfoot derived from the control it exercised over its employees' breaks. Our analysis of the *Carrillo* factors leads us to conclude that Blackfoot retained authority over its employees during the mid-morning and mid-afternoon breaks and that BeVan's injury occurred during the course and scope of her employment.

## CONCLUSION

¶28 We conclude that substantial credible evidence exists to support the WCC's finding that BeVan was injured while on an authorized break. We further conclude that the WCC correctly applied the four factors of *Carrillo v. Liberty Northwest Ins.*, 278 Mont. 1, 922 P.2d 1189 (1996), and correctly determined that BeVan's injury occurred within the course and scope of her employment. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ JIM RICE
/S/ BRIAN MORRIS