No. 96-448

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

COLLEEN CONNERY,

     Petitioner and Respondent,

  v.

LIBERTY NORTHWEST INSURANCE CORPORATION,

     Respondent, Appellant, and Insurer

  for

WINTER SPORTS, INC.,

     Employer.

FILED

DEC 10 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   The Workers' Compensation Court,
                The Honorable Mike McCarter, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Larry W. Jones, Senior Attorney; Liberty
          Northwest Insurance Corp.; Missoula, Montana

     For Respondent:

          David W. Lauridsen and Laurie Wallace;
          Bothe & Lauridsen, Columbia Falls, Montana

Submitted on Briefs:  November 14, 1996

Decided:  December 10, 1996

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The respondent, Colleen Connery, petitioned the Workers' Compensation Court for the State of Montana to find that she was injured during the course of her employment with Winter Sports, Inc. After a trial, the Workers' Compensation Court entered judgment for Connery and against the appellant, Liberty Northwest Insurance Corp., which insured her employer. Liberty appeals the Workers' Compensation Court's decision. We affirm the judgment of the Workers' Compensation Court.

The issues on appeal are:

1. Did the Workers' Compensation Court err when it interpreted § 39-71-118(2)(a), MCA?

2. Was there substantial evidence to support the Workers' Compensation Court's finding that Connery was an employee injured in the course and scope of her employment?

FACTUAL BACKGROUND

Connery was employed as a certified ski instructor by Winter Sports, Inc., at Big Mountain ski area near Whitefish.

On December 10, 1995, Connery signed in at work at 8:45 a.m., and attended a ski instructor lineup at 9:15 a.m. At approximately 9:45 a.m., she was assigned to a private lesson scheduled to commence at 11:00 a.m. She was told that the lesson would take place on a hill which is served by the Platter Lift.

Shortly thereafter, Connery and Mark Roy, another ski instructor, took the main lift to the top of Big Mountain. They

2

skied down the backside, and took another lift back to the top. They then skied down the front of the mountain.

When Connery was approximately 200 yards above the base of the Platter Lift, she stopped to wait for Roy. As Roy approached, he was unable to stop and collided with Connery. As a result of the collision, she suffered a severe fracture of her left leg. The collision occurred at approximately 10:35 a.m.--twenty-five minutes before the private lesson was scheduled to commence.

Connery filed a workers' compensation claim in which she sought lost wages and medical benefits. Liberty acknowledged the claim, but denied it based on § 39-71-118, MCA, which provides, in relevant part:

> (1) The term "employee" or "worker" means:
> . . . .
> (2) The terms defined in subsection (1) do not include a person who is:
> (a) participating in recreational activity and who at the time is relieved of and is not performing prescribed duties, regardless of whether the person is using, by discount or otherwise, a pass, ticket, permit, device, or other emolument of employment . . . .

Connery subsequently filed a petition for hearing in the Workers' Compensation Court. A trial was held in Kalispell on June 5, 1996.

At the trial, Liberty contended that when the accident occurred Connery was engaged in a recreational activity, and that she was relieved of and not performing prescribed duties related to her employment. On that basis, it asserted that the recreational activity exclusion in § 39-71-118(2)(a), MCA, is applicable, and

3

that, pursuant to the statutory exclusion, Connery's claim should be denied.

Connery, however, claimed that on the morning of December 10, 1995, she was engaged in a "warm-up run." A "warm-up run" allows ski instructors to become familiar with the weather and ski conditions, and to condition and physically prepare themselves before they give ski lessons. It is undisputed that Winter Sports, Inc., encourages its ski instructors to take "warm-up runs" before they give ski lessons.

Connery claimed that her "warm-up run" was, in fact, a prescribed duty of her employment. On that basis, she contended that the exclusion in § 39-71-118(2)(a), MCA, is not applicable, and that her injury is work-related and compensable.

At the conclusion of the trial, the Workers' Compensation Court determined that: (1) at the time Connery was injured, she was engaged in a "warm-up run"; (2) the recreational activity exclusion in § 39-71-118(2)(a), MCA, is not applicable to the facts of Connery's claim; (3) Connery suffered a compensable industrial accident during the course and scope of her employment; and therefore (4) she is entitled to wage loss and medical benefits pursuant to the Workers' Compensation Act. Accordingly, the court entered judgment in favor of Connery.

ISSUE 1

Did the Workers' Compensation Court err when it interpreted § 39-71-118(2)(a), MCA?

4

When we review the Workers' Compensation Court's conclusions of law, the standard of review is whether those conclusions are correct. *Wunderlich v. Lumbermens Mut. Cas. Co.* (1995), 270 Mont. 404, 410, 892 P.2d 563, 567.

The relevant portion of § 39-71-118, MCA, provides:

(1) The term "employee" or "worker" means:

. . . .

(2) The terms defined in subsection (1) do not include a person who is:

(a) participating in recreational activity and who at the time is relieved of and is not performing prescribed duties, regardless of whether the person is using, by discount or otherwise, a pass, ticket, permit, device, or other emolument of employment . . . .

When it interpreted the statute, the Workers' Compensation Court made the following conclusion:

Section 39-71-118(2)(a), MCA, plainly requires a two-part analysis, first focusing on whether activity leading to the accident was a recreational one. If it was, then a second criteria must be met, that being to wit: at the time of the activity the injured individual must have been relieved of and not performing duties of [her] employment.

The court held that the first prong of § 39-71-118(2)(a), MCA, was satisfied, because Connery conceded that she was involved in a recreational activity at the time of her accident.

When it analyzed the second prong, the court applied a traditional course and scope of employment analysis to determine "whether a worker involved in a recreational activity was nonetheless performing prescribed duties of employment at the time of an accident." Ultimately, the court determined that the second

5

prong was not satisfied. Therefore, it held that the statutory exclusion is not applicable to the facts of Connery's claim.

On appeal, Liberty contends that the Workers' Compensation Court erred when it interpreted § 39-71-118(2)(a), MCA, and applied a traditional course and scope of employment analysis.

In support of its claim, Liberty asserts the following argument: (1) the plain and unambiguous meaning of § 39-71-118(2)(a), MCA, is that a person engaged in recreational activity, and not performing what she has been hired and paid to do (her "prescribed duties") is excluded from the statutory definition of an "employee"; (2) because the statute is plain and unambiguous on its face, it must be directly applied as written, and no further analysis is required or permitted; and therefore (3) the Workers' Compensation Court erred when it failed to apply the plain meaning of the statute and, instead, applied a traditional course and scope of employment analysis.

Liberty correctly recognizes that when a statute is plain and unambiguous on its face, it must be applied as written, and "the courts may not go further and apply any other means of interpretation." *Murer v. State Fund* (1994), 267 Mont. 516, 520, 885 P.2d 428, 430.

Liberty then, however: (1) asserts its own interpretation of the statute; (2) claims that its interpretation constitutes the plain and unambiguous meaning of the statute; and (3) maintains that, pursuant to well-established principles of statutory

6

construction, the court is obligated to apply that (alleged) plain and unambiguous meaning.

We reject Liberty's interpretation of the statute. Instead, we hold that the "prescribed duties" prong of § 39-71-118(2)(a), MCA, can only be reasonably applied based on a traditional course and scope of employment analysis.

The purpose of § 39-71-118(2)(a), MCA, as revealed by its legislative history, is clear. Many employers, such as Winter Sports, Inc., offer seasonal passes to their employees as a form of compensation. Those seasonal passes are used by the employees for work-related and personal recreational activities. Section 39-71-118(2)(a), MCA, shields employers from workers' compensation liability when an employee is injured while he or she is off-duty and engaged in purely personal recreational activity.

Despite the statute's clear purpose, the term "prescribed duties" is, itself, not defined, and cannot be arbitrarily limited by a definition such as the one Liberty proposes. Any attempt at a uniform definition of an employee's "prescribed duties" will, inevitably, fail to account for all of the potential fact patterns that could arise. The definition of an employee's "prescribed duties" is fact-intensive, and will vary considerably from case to case. Therefore, the application of a traditional course and scope of employment analysis is, and will be, necessary to determine exactly what an employee's "prescribed duties" are in a particular case.

7

Accordingly, we hold that the Workers' Compensation Court's conclusions of law are correct, and that it did not err when it held that § 39-71-118(2)(a), MCA, requires a traditional course and scope of employment analysis.

## ISSUE 2

Was there substantial evidence to support the Workers' Compensation Court's finding that Connery was an employee injured in the course and scope of her employment?

The Workers' Compensation Court's findings of fact will be upheld if they are supported by substantial credible evidence. *Wunderlich*, 270 Mont. at 408, 892 P.2d at 566.

The Workers' Compensation Court found that, at the time of the accident, Connery was engaged in a "warm-up run." Although she was, indisputably, involved in a recreational activity, the court also found that her "warm-up run" was a prescribed duty of her employment. On that basis, the court determined that the exclusion in § 39-71-118(2)(a), MCA, is not applicable, that the injury occurred during the course and scope of her employment, and that, therefore, the injury is a compensable industrial accident.

On appeal, Liberty contends that the Workers' Compensation Court's findings are not supported by substantial credible evidence. Specifically, it asserts that the court erred when it found that Connery's "warm-up run" was a prescribed duty of her employment; rather, it maintains that she was recreationally skiing on her own free time and not performing a prescribed duty of

8

employment. Therefore, it claims that the exclusion in § 39-71-118(2)(a), MCA, applies, and that her claim must be denied.

At the outset, we recognize that giving ski lessons was not Connery's only employment duty. Both she and Mark Roy testified that she was also expected or required to provide noon hour child care; report to work between 8:00 and 9:00 a.m.; sign up for work upon arrival, and sign-out upon departure; attend an employee lineup at 9:15 a.m.; attend ski clinics each month; arrive at the lesson site fifteen minutes early; and frequently check the office and message boards to determine if any "walk-in" lessons had been scheduled. Additionally, her employee manual recommended that all ski instructors take "warm-up runs" before they give a lesson.

Most significant, however, is the application of the facts of Connery's claim to the legal principles of a traditional course and scope of employment analysis. In Montana, the test to determine whether an employee was injured in the course and scope of her employment is as follows:

> Controlling factors repeatedly relied upon to determine a work-related injury include: (1) whether the activity was undertaken at the employer's request; (2) whether employer, either directly or indirectly, compelled employee's attendance at the activity; (3) whether the employer controlled or participated in the activity; and (4) whether both employer and employee mutually benefitted from the activity. The presence or absence of each factor, may or may not be determinative and the significance of each factor must be considered in the totality of all attendant circumstances.

*Courser v. Darby School Dist. No. 1* (1984), 214 Mont. 13, 16-17, 692 P.2d 417, 419.

9

The Workers' Compensation Court concluded that, pursuant to the facts of this case and the application of those facts to the four-factor test in *Courser*, Connery's "warm-up run" was within the course and scope of her employment, and that, therefore, it was a prescribed duty of her employment. In support of this conclusion, the court stated:

> A warm-up run was recommended by her employer, thus the first *Courser* factor is met. It is also reasonable to assume that both the employer and [Connery] benefitted from a warm-up run in that [Connery] unlimbered her muscles and joints and generally familiarized herself with snow conditions. The fact that the employer recommended a warm-up run indicated its belief that such runs directly or indirectly contributed to ski lessons. Thus, the fourth *Courser* factor is met. By requiring instructors to sign-in and attend lineup, and assigning lessons at odd times, such as occurred in this case, the employer also indirectly contributed to claimant's warm-up run on December 10. There was insufficient time for her to leave the ski area or engage in other substantial activities, whereas she was dressed and ready for skiing and had sufficient time to make a warm-up run. Thus, the second [*Courser*] factor appears to be met, although weakly. The third [*Courser*] factor . . . is not met. Nonetheless, on balance [Connery's] warm-up run was within the course and scope of [Connery's] employment and part of her duties.

Additionally, the court found that Connery's "warm-up run" "terminated in the immediate vicinity of her lesson and terminated shortly before the lesson was to begin."

Based on our review of the record, we conclude that the Workers' Compensation Court's findings of fact are supported by substantial credible evidence. Those findings are consistent with the testimony of both Connery and her co-worker, Mark Roy. Accordingly, we hold that the Workers' Compensation Court did not

10

err when it determined that, based on the facts in this case, Connery was injured in the course and scope of her employment.

The judgment of the Workers' Compensation Court is affirmed.

/s/ Terry Trieweiler
Justice

We concur:

/s/ Karla M. Gray

/s/ James

/s/ William E. Hunt Sr.

/s/ W. William Leaphart
Justices