DA 07-0208

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 3

CURTIS M. MICHALAK,

      Petitioner and Appellee,

  v.

LIBERTY NORTHWEST INSURANCE CORPORATION,

      Respondent/Insurer and Appellant.

APPEAL FROM:    The Workers' Compensation Court,
                      Cause No. WCC 2006-1641,
                      Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Larry W. Jones, Law Offices of Larry W. Jones, Missoula, Montana

      For Appellee:

      Sydney E. McKenna and Justin Starin, Tornabene & McKenna, PLLC,
      Missoula, Montana

Submitted on Briefs:  November 28, 2007

Decided:  January 3, 2008

Filed:

_____
                Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Liberty Northwest Insurance Corporation (Liberty) appeals from the judgment of the Workers' Compensation Court (WCC). We affirm.

¶2     We restate the issues as follows:

¶3     Did the WCC err when it concluded that Michalak's injury occurred during the course and scope of his employment?

¶4     Did Michalak abandon his employment by participating in reckless behavior?

## BACKGROUND

¶5     On July 23, 2005, Curtis M. Michalak (Michalak) suffered an injury while riding a wave runner at his employer's annual company picnic at Flathead Lake. At the time of his injury, Michalak worked for Felco Industries, Ltd. (Felco) in Missoula, Montana, and Liberty provided Felco's workers' compensation insurance.

¶6     Since approximately 1980, John Felton (Felton), Felco's president and owner, has hosted a company picnic at his lakeside home. Felco generally invites its employees and their families, friends, and vendors to the company picnic. In 2005, Felco rented wave runners for the annual picnic. While riding one of the wave runners, Michalak suffered serious injuries, including several vertebrae fractures, and he was unable to return to his employment with Felco.

¶7     Michalak filed a workers' compensation claim for his injury. Liberty denied Michalak's claim on the basis that the injury did not occur within the course and scope of his employment. Michalak then filed a claim with the WCC seeking compensation for his injuries.

2

¶8 The WCC issued findings of fact and conclusions of law after considering Michalak's trial testimony and the deposition testimony of Michalak, his co-workers, and other witnesses. The WCC found that Felco notified its employees of the 2005 picnic by placing a notice within the employees' pay stubs and by displaying notices within the plant. The WCC found that Felco paid for all the picnic supplies, including the wave runner rentals. The WCC found that Michalak had the duty of overseeing the wave runners during the picnic, and it found credible Michalak's testimony that he bore responsibility for supervising the wave runners' operation, including providing riders with safety instructions, monitoring the wave runners' fuel and oil levels, instructing others on how to ride the wave runners, and enforcing time limits on the wave runners' use. The WCC further found that, "during the performance of his duties," Michalak took a ride on one of the wave runners and was injured.

¶9 The WCC next applied the four "course and scope" factors set forth in *Courser v. Darby School Dist. No. 1* and concluded that Michalak was within the course and scope of his employment when he suffered his injury. 214 Mont. 13, 16-17, 692 P.2d 417, 419 (1984). Liberty appeals the WCC's holding and challenges both the WCC's findings of fact and its conclusions of law.

**STANDARD OF REVIEW**

¶10 We review the WCC's findings of fact to determine whether they are supported by substantial credible evidence, and we review the WCC's conclusions of law to determine whether they are correct. *Simms v. State Compensation Ins. Fund*, 2005 MT 175, ¶ 11, 327 Mont. 511, ¶ 11, 116 P.3d 773, ¶ 11. Substantial credible evidence to support a

finding of fact may be somewhat less than a preponderance of evidence but must be more than a mere scintilla. *Simms*, ¶ 11. We apply the Workers' Compensation Act (the Act) effective at the time an employee suffers an injury. *Wilson v. Liberty Mut. Fire Ins.*, 273 Mont. 313, 316, 903 P.2d 785, 787 (1995). The 2005 version of the Act governed when Michalak was injured on July 23, 2005.

## DISCUSSION

¶11 **I Did the WCC err when it concluded that Michalak's injury occurred during the course and scope of his employment?**

¶12 Employees who receive an injury "arising out of and in the course of employment," are entitled to workers' compensation benefits. Section 39-71-407, MCA (2005). Liberty argues that § 39-71-118(2)(a), MCA (2005), removes Michalak from the definition of employee and therefore Michalak's injury is not compensable.

¶13 Section 39-71-118(2)(a), MCA (2005), defines "employee" and "worker" to exclude a person who is "participating in recreational activity and who at the time is relieved of and is not performing prescribed duties . . . ." Thus, a person injured while participating in recreational activities still qualifies as an "employee" and retains workers' compensation coverage if the person is injured while performing "prescribed duties." Section 39-71-118(2)(a), MCA (2005); *Connery v. Liberty Northwest Ins. Corp.*, 280 Mont. 115, 929 P.2d 222 (1996). *Courser*'s traditional four-factor "course and scope" analysis determines whether a person is "performing prescribed duties." *Connery*, 280 Mont. at 120, 929 P.2d at 225. The factors are: (1) whether the activity was undertaken at the employer's request; (2) whether the employer, directly or indirectly,

4

compelled the employee's attendance at the activity; (3) whether the employer controlled or participated in the activity; and (4) whether the employer and the employee mutually benefited from the activity. *Connery*, 280 Mont. at 121, 929 P.2d at 226. Each factor's presence or absence "may or may not be determinative," and each factor's significance "must be considered in the totality of all attendant circumstances." *Connery*, 280 Mont. at 121, 929 P.2d at 226 (quoting *Courser*, 214 Mont. at 16-17, 692 P.2d at 419). After evaluating these factors, the WCC concluded that Michalak's injury was compensable because he had not been relieved of his "prescribed duties" and thus was acting within the course and scope of his employment. We review the WCC's findings of fact to determine whether they are supported by substantial credible evidence, and we review the WCC's conclusions of law to determine whether they are correct. *Simms*, ¶ 11.

¶14 Our review of the record supports the WCC's finding, under the first *Courser* factor, that the picnic was undertaken at Felco's request. Felton testified that the Felco company picnic had been an annual event since 1980. Felton testified that he selects the particular date of the picnic and that he and Felco pay the picnic expenses. Felton further testified that Felco provided paddle boats and wave runners because "it's common sense that people are going to more likely come if you have something like that . . . ." Denise Sand, Felco's secretary, testified that she notifies the employees about the picnic through notices placed around the plant and in the employees' paychecks. The notice that Sand distributed in 2005 requested a head-count and indicated that friends, family, and vendors were welcome at the Felco company picnic. Tim Yoder, a Felco supervisor

5

in charge of Felco's safety program, testified that he received a picnic invitation in his paycheck. Michalak also testified that he received an invitation in his paycheck.

¶15 Regarding the second *Courser* factor, the WCC found that "at a minimum, Felco indirectly compelled [Michalak's] attendance at the picnic." The WCC stated that Michalak felt compelled to attend the picnic because his supervisor had asked him to oversee the wave runners. Steve Talley, Michalak's supervisor, testified that he felt responsible for instructing the picnic attendees on safety procedures relating to the wave runners. Talley testified that he asked Michalak to assist with and watch over the wave runners because Talley knew that he would be unable to continuously supervise the wave runners. Talley testified that Michalak agreed to provide assistance. Michalak testified that Talley asked him to oversee the wave runners at the picnic. Michalak indicated that he understood Talley's request to be made in his capacity as Felco's foreman, not as a personal favor to Talley. Michalak testified that he went to the office of Fish, Wildlife, and Parks and at some point obtained and reviewed a copy of the Montana boating regulations. Michalak testified that one of his daughters felt ill on the morning of the picnic, and he thought he would be unable to attend. Her condition soon improved, however, and Michalak testified that he and his family went to the picnic so that he could fulfill his obligation and respect his employer. We conclude that substantial credible evidence supports the WCC's finding that Felco compelled Michalak's attendance at the company picnic.

¶16 As to the third *Courser* factor, the WCC found that Felco controlled and participated in the picnic activities. Felton testified that he selects the date of the picnic

and that he and Felco pay for the picnic expenses, including food, beverages, paddleboats, and wave runners. He further testified that Felco provides everything and has a policy against employees bringing items to the picnic. Felton testified that he hosts the company picnic at his home on Flathead Lake. Felton further testified that he believed Felco took a tax deduction for the picnic expenses. Shawn Skinner, Felco's general manager, testified that he had duties and responsibilities related to organizing the picnic, but primarily delegated the tasks associated with organizing the picnic to Ken Lockwood, an independent contractor, and Denise Sand. Sand testified that she used a Felco company credit card to purchase the picnic supplies, including the wave runner rentals. Sand further testified that Felco claimed the picnic expenses as a tax deduction. Several witnesses also testified that the annual company picnic features a horseshoe tournament, with the winner earning a spot on a plaque displayed at Felco. We conclude that substantial credible evidence supports the WCC's finding that Felco controlled or participated in the picnic.

¶17 Finally, the WCC found that Felco and its employees mutually benefited from the picnic. Felton testified that the company picnics were good for the company and that the picnic promoted good relations. Tim Yoder testified that the picnic was good for the company and good for morale. Skinner testified that the company picnic benefited Felco and Felco's employees. Sand testified that the picnic was good for the company because the picnic provides an opportunity for the employees to congregate with their spouses and extended family. We conclude that substantial credible evidence supports the WCC's

7

finding, under the fourth *Courser* factor, that the Felco company picnic provided mutual benefit to Felco and its employees.

¶18 Liberty's argument that Michalak failed to satisfy the *Courser* factors rests on the misconception that the "activity" in the *Courser* analysis should be Michalak's wave runner ride, rather than the Felco company picnic. However, Liberty's narrow focus on Michalak's wave runner ride is inconsistent with *Courser* itself. In *Courser,* we determined that Courser was within the course and scope of his employment when he was injured in a motorcycle accident while commuting from graduate school to his home in Dillon, Montana. We applied the four-factor "course and scope" analysis and focused on the activity of attending graduate school, not the motorcycle ride. 214 Mont. at 16-17, 692 P.2d at 419. The WCC properly focused its *Courser* analysis on the Felco company picnic as the "activity," rather than Michalak's ride on the wave runner, to determine whether Michalak's injury occurred within the course and scope of his employment.

¶19 We conclude that substantial credible evidence supports the WCC's findings under the *Courser* factors. Based on its *Courser* analysis, the WCC determined that, though Michalak was injured while participating in a recreational activity, he nonetheless was within the course and scope of his employment when he was injured and that his injury was compensable. We conclude that the WCC's findings support its conclusion of law that Michalak was injured within the course and scope of his employment.

¶20 Liberty argues that the above four-factor analysis has no place in Montana's jurisprudence and advocates that we overrule *Courser*. According to Liberty, the *Courser* factors trace their ancestry to the "liberal construction" statute, § 39-71-104,

8

MCA (1985), and, because the Legislature has repealed that statute, the factors should be excised from our jurisprudence. Additionally, Liberty describes this Court's *Connery* decision, in which we concluded that the "prescribed duties" of § 39-71-118(2)(a), MCA, are determined by applying the *Courser* factors, as "simply a judicial abracadabra." We disagree with Liberty on both counts. First, the *Courser* factors set forth *what* a court should analyze to determine whether a person's injury falls within the course and scope of employment; the Legislature's directive that the Act be construed according to its terms and not liberally in favor of any party instructs a court *how* to interpret the Act. Section 39-71-105, MCA (2005). The *Courser* factors and the Legislature's directive are not mutually exclusive and we decline Liberty's plea to overrule *Courser* and its successive body of case law. Second, as to the "judicial abracadabra" charge, we explained in *Connery* that the Legislature left the term "prescribed duties" undefined and we noted that defining prescribed duties is fact-intensive and varies depending on the particular case. Thus, we concluded that "the application of a traditional course and scope of employment analysis is, and will be, necessary to determine exactly what an employee's 'prescribed duties' are in a particular case." 280 Mont. at 120, 929 P.2d at 225. In the eleven years since *Connery*, the Legislature has declined to modify or further define the term "prescribed duties." Absent further legislative direction, we reject Liberty's plea to overrule *Courser*, *Connery*, and the ensuing cases applying the "course and scope" factors. We conclude that the WCC applied the correct analysis to determine whether Michalak's injuries were compensable.

¶21 **II      Did Michalak abandon his employment by participating in reckless behavior?**

¶22    Liberty argues that Michalak abandoned his employment by operating the wave runner in a reckless manner.  According to Liberty, the only way Michalak could have sustained his severe injuries is by operating the wave runner at a high rate of speed and in a dangerous manner.  In support of its argument, Liberty cites to *Hicks v. Glacier Park, Inc.*, 236 Mont. 113, 768 P.2d 346 (1989).

¶23    In *Hicks*, a Glacier National Park bellhop, who fancied himself an auto-mechanic, attempted to assist a guest with a weak car battery.  The bellhop first push-started the car, then accelerated to a high rate of speed, failed to stop at a stop sign, and eluded a pursuing park ranger by putting "the pedal to the metal."  The bellhop eventually lost control of the vehicle and crashed into a tree approximately two-and-a-half miles from the hotel.  236 Mont. at 114, 768 P.2d at 347.  The WCC found that even if the bellhop was initially within the course and scope of his employment, he deviated from the scope of his employment when he evaded the law enforcement officer.  We affirmed the WCC's judgment denying compensation to the bellhop.  *Hicks*, 236 Mont. at 117, 768 P.2d at 348.

¶24    Liberty argues that, like the bellhop in *Hicks*, Michalak abandoned the course and scope of his employment when he operated the wave runner recklessly and at high speed and thus "pursue[d] an objective in nowise essential to or incidental to any service he is paid to perform . . . ."  *Hicks*, 236 Mont. at 115, 768 P.2d at 347 (emphasis omitted).  *Hicks* is inapplicable to this case.  Unlike *Hicks*, the WCC in this case made no findings

that Michalak acted recklessly or negligently. In fact, the WCC made no findings regarding the manner in which Michalak operated the wave runner other than finding that he was injured during the performance of his duties:

> [Michalak] testified that he was instructed to help pick up the wave runners, supervise, give safety instructions, monitor the fuel and oil levels, provide instructions on how to ride them, and enforce time limits on their operation. At one point, during the performance of his duties, [Michalak] elected to take a turn on one of the wave runners himself because one was available.

> While riding one of the wave runners, [Michalak] sustained the injuries that are the subject of this action. [Michalak's] recollection as to the specifics of how he was injured is vague because of his injuries.

¶25 Though Liberty acknowledges that Michalak provided some assistance before taking a ride on the wave runner, Liberty claims that testimony from Michalak and Talley supports finding both that Michalak was operating the wave runner in a reckless manner and that he was untrustworthy as a witness. Michalak testified that as he executed a subtle left-hand turn, he saw "something very weird in the water, and that is the last thing I remember." Michalak testified that he regained consciousness underwater and that he had to blow bubbles to determine the direction of the surface. He stated that when he gained the surface of the lake, the wave runner was "quite a distance" from him. Talley testified that Michalak told him that "he was out there flipping the Wave Runner around" when he was injured. Based on this testimony, Liberty urges that the only possible explanation for Michalak's injury is that "he was traveling at a very high rate of speed when he lost control of the wave runner and was plunged deep into Flathead Lake."

¶26 In essence, Liberty calls on this Court to make additional findings of fact regarding Michalak's injury. Liberty states that "it is conclusively established by the [un-

11

contradicted] testimony of Talley that [Michalak] injured himself while whipping the wave runner around at a high speed." However, Talley's testimony is contradicted: Michalak testified that he was not "wave-jumping" when he was injured, but that he was making a subtle left-hand turn and saw a discoloration in the water. Other witnesses testified that they saw logs floating in the lake in 2005. Further, the WCC determined that Michalak was a credible witness. The WCC also found that Michalak was injured during the performance of his duties; we concluded under Issue I that substantial credible evidence supported the WCC's *Courser* analysis and that the WCC correctly concluded that Michalak's injury occurred during the course and scope of his employment. Our standard is whether substantial credible evidence supports the WCC's findings, not whether evidence supports findings different from those made by the WCC. *Taylor v. State Compensation Ins. Fund*, 275 Mont. 432, 440, 913 P.2d 1242, 1246 (1996). In this case, the WCC's findings are supported by substantial credible evidence; moreover, we refuse to substitute our judgment for that of the WCC's when the issue "relates to the weight given to certain evidence or the credibility of the witnesses." *Taylor*, 275 Mont. at 437, 913 P.2d at 1245.

## CONCLUSION

¶27 We conclude that the WCC properly applied the four factors from *Courser v. Darby School Dist. No. 1*, 214 Mont. 13, 692 P.2d 417 (1984), to determine whether Michalak's injury while riding a wave runner at the Felco company picnic occurred during the course and scope of his employment. We conclude that substantial credible evidence exists to support the WCC's findings under the *Courser* factors and that the

WCC correctly concluded that Michalak was injured during the course and scope of his employment. We affirm.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JOHN WARNER
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

13