DA 10-0403

FILED

March 22 2011

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 49

BROCK HOPKINS,

  Petitioner and Appellee,

 v.

UNINSURED EMPLOYERS' FUND,

  Respondent/Third-Party Petitioner and Appellee,

 v.

RUSSELL A. KILPATRICK,

  Third-Party Respondent and Appellant.

APPEAL FROM:  Montana Workers' Compensation Court, WCC No. 2008-2152
       Honorable James Jeremiah Shea, Presiding Judge

COUNSEL OF RECORD:

   For Appellant:

     Russell A. Kilpatrick (self-represented litigant); Coram, Montana

   For Appellee:

     Jeffrey D. Ellingson; Ellingson Law Firm, Kalispell, Montana
     (for Brock Hopkins)

     Joseph R. Nevin; Attorney at Law, Helena, Montana (for UEF)

         Submitted on Briefs: February 16, 2011
             Decided: March 22, 2011

Filed:

     _____
           Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Russell Kilpatrick appeals the decision of the Workers' Compensation Court (WCC), concluding that Brock Hopkins was employed by Kilpatrick, and Hopkins was acting in the course and scope of employment at the time of his injuries.  We affirm.

BACKGROUND

¶2     Great Bear Adventures (the Park), is located near West Glacier, Montana.  Visitors to the Park enjoy a drive-thru experience of bears in their natural habitat, surrounded by multiple layers of electrified fence.  Kilpatrick owns the Park and lives on adjacent property.  Hopkins began working there in 2002, doing various tasks, including maintenance and feeding the bears.  In the past, some workers have been known to smoke marijuana on the premises.  Although Kilpatrick professed to not condone marijuana use by workers, testimony established that he had smoked marijuana at the Park in the past, and on occasion had done so with Hopkins.

¶3     On November 2, 2007, Hopkins traveled to work at the Park at Kilpatrick's request.  On the way, Hopkins smoked marijuana.  Kilpatrick instructed Hopkins to raise the boards on the Park's front gates so they would not freeze to the ground.  Before proceeding, Hopkins asked Kilpatrick if he should feed the bears as well.  Testimony regarding Kilpatrick's answer conflicted.  However, the WCC ultimately found that Kilpatrick never told Hopkins not to feed the bears.

¶4     After completing work on the gates, Hopkins returned to Kilpatrick's house.

2

Kilpatrick was asleep inside. Hopkins mixed food for the bears and used Kilpatrick's truck to drive into the Park. He entered the bears' pen and began to place food out. Once inside, nothing separated him from the bears. At some point while Hopkins was working, the largest bear, Red, attacked him. The bear knocked Hopkins to the ground, sat on him, and bit his leg, knee and rear-end. While this was occurring, another bear, Brodie, came up from behind, and bit Red. In response, Red moved off of Hopkins momentarily, and Hopkins escaped by crawling under one of the electrified wires surrounding the pen. Kilpatrick eventually found Hopkins, and he was transported to the hospital by helicopter. He suffered severe injuries.

¶5     Kilpatrick did not carry workers' compensation insurance. Hopkins petitioned the WCC for workers' compensation benefits from the Uninsured Employers' Fund. Both the Uninsured Employers' Fund and Kilpatrick opposed Hopkins' petition. The WCC found for Hopkins, concluding that (1) Hopkins was employed by Kilpatrick at the time of Hopkins' injuries, (2) Hopkins was in the course and scope of his employment at the time of his injuries, (3) marijuana use was not the major contributing cause of Hopkins' injuries, and (4) Hopkins was not performing services in return for aid or sustenance only. Kilpatrick appealed to this Court.

ISSUES

¶6     Kilpatrick raises four issues on appeal:

1. Whether Hopkins was employed by Kilpatrick at the time of Hopkins' injuries.

2. Whether Hopkins was in the course and scope of his employment at the time of his

3

injuries.

3. Whether marijuana use was the major contributing cause of Hopkins' injuries.

4. Whether Hopkins was performing service for Kilpatrick in return for aid or sustenance only.

STANDARD OF REVIEW

¶7     We review a Workers' Compensation Court decision to determine whether the findings of fact are supported by substantial credible evidence, and whether the conclusions of law are correct. *Tinker v. Montana State Fund*, 2009 MT 218, ¶ 25, 351 Mont. 305, 211 P.3d 194.

DISCUSSION

¶8     *Whether Hopkins was employed by Kilpatrick.*

¶9     The WCC correctly concluded that Kilpatrick, "unquestionably controlled the details of Hopkins' work at the bear park." Sections 39-71-117(1)(a), and -118(1)(a), MCA. Hopkins had worked at the Park since 2002, received regular payments from Kilpatrick, and engaged in tasks at Kilpatrick's command. Furthermore, Kilpatrick's assertion that Hopkins was a volunteer is without support. Section 39-71-118(2), MCA. As the WCC succinctly stated, "[t]here is a term of art used to describe the regular exchange of money for favors – it is called 'employment.'"

¶10    *Whether Hopkins was in the course and scope of his employment.*

¶11    Factors considered in a "course and scope" analysis include (1) whether the activity was undertaken at the employer's request, (2) whether the employer, directly or indirectly,

4

compelled the employee's attendance at the activity, (3) whether the employer controlled or participated in the activity, and (4) whether the employer and the employee mutually benefited from the activity. *Michalak v. Liberty Northwest Ins. Corp.*, 2008 MT 3, ¶ 13, 341 Mont. 63, 175 P.3d 893. The presence or absence of any given factor is not dispositive, as the determination is dependent on a totality of the circumstances. *Michalak*, ¶ 13.

¶12 On November 2, 2007, Kilpatrick compelled Hopkins to work at the Park. Even though there was conflicting testimony as to whether Kilpatrick agreed that Hopkins should feed the bears on that day, an employee's injuries are compensable unless the employee is not "attending to employment-related matters" and has abandoned the course and scope of his employment. *Dale v. Trade Street, Inc.*, 258 Mont. 349, 355, 854 P.2d 828, 832 (1993). Feeding the bears was one of Hopkins' regular employment duties. Hopkins testified he was engaged in the "same routine" he had done for two or three years and would not have fed the bears had Kilpatrick expressly so instructed him. Feeding the bears was not a personal activity "severed" from the continuity of Hopkins' employment-related duties at the Park. Additionally, the WCC found that "Kilpatrick benefitted from the care and feeding of the bears that Hopkins provided since presumably customers are unwilling to pay cash to see dead and emaciated bears." The WCC did not err when it concluded that Hopkins was acting in the course and scope of his employment at the time of his injuries.

¶13 *Whether marijuana was the major contributing cause of Hopkins' injuries.*

¶14 Non-prescription drug consumption will preclude an injured employee's benefits if consumption was the leading cause contributing to the result, when compared to all others.

Section 39-71-407(4), and -407(13), MCA. No evidence was presented regarding Hopkins' level of impairment. The WCC aptly noted, "Hopkins' use of marijuana to kick off a day of working around grizzly bears was ill-advised to say the least and mind-bogglingly stupid to say the most." However, the WCC further noted that grizzlies are "equal opportunity maulers," without regard to marijuana consumption. Without evidence of Hopkins' level of impairment, the WCC correctly concluded that marijuana was not the major contributing cause of Hopkins' injuries.

¶15 *Whether Hopkins' services were in exchange for aid or sustenance only.*

¶16 Subject to exceptions that are inapplicable here, employment of a person performing services in exchange for aid or sustenance only is not covered by the Workers' Compensation Act. Section 39-71-401(2)(h), MCA. The Workers' Compensation Act defines aid or sustenance as a "subsidy made to provide a means of support, maintenance, or subsistence for the recipient." Section 39-71-116(3), MCA. Kilpatrick testified that he gave money to Hopkins, not as wages, but rather "out of his heart." The WCC found this testimony to be without credibility, and the trier of fact is in the best position to weigh the respective credibility of witnesses. *State v. Clark*, 2008 MT 419, ¶ 14, 347 Mont. 354, 198 P.3d 809. The WCC did not err when it concluded that Hopkins' services were not in exchange for aid or sustenance only.

¶17 For the reasons stated above, we hold that the WCC's findings of fact are supported by substantial credible evidence, and the conclusions of law are correct.

¶18 Affirmed.

/S/ MIKE McGRATH

We concur:


/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JIM RICE